UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DARYL BELTON, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17cv2006(KAD) |
| v. | : | |
| | : | |
| LIEUTENANT TIMOTHY WYDRA, ET AL., | : | |
| Defendants. | : | |

**INITIAL REVIEW ORDER**

**Preliminary Statement**

The plaintiff Daryl Belton ("Belton"), currently incarcerated at Corrigan-Radgowski

Correctional Institution, filed a complaint under 42 U.S.C. § 1983 in which he brings claims

arising out of the October 14, 2016 search of his residence, seizure of items of property from his

residence and his arrest and prosecution by members of the Hamden Police Department, a

special agent of the Federal Bureau of Investigation ("FBI"), officers in the West Haven Police

Department and an Officer in the New Haven Police Department. Because Belton has named a

special agent of the FBI as a defendant, the court liberally construes the complaint as also having

been filed pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403

U.S. 388 (1971). For the reasons set forth below, the complaint is dismissed in part.

Included in the caption on page one of the complaint are the following defendants:

Lieutenant Timothy Wydra ("Wydra"), Sergeant John Sullivan ("Sullivan"), DC Bo Kicak

("Kicak"), Detective Jomo Crawford ("Crawford"), Sergeant Eric Goclowski ("Goclowski"),

Detective Raymond Quinn ("Quinn"), Officer Kevin Hall ("Hall"), Task Force Officer

Mastropetre (Mastropetre"), Officer Eric Hallstrom ("Hallstrom"), Officer Michael Mellon

("Mellon"), Officer Mark Sheppard, ("Sheppard") Lieutenant Gabriel Lupo ("Lupo"), Officer

Matthew Baruto ("Baruto"), Officer Robert Mansfield ("Mansfield"), Officer Enrique Rivera-

Rodriguez ("Rivera-Rodriguez"), Task Force Officer Mark Vere ("Vere"), the Hamden Police

Department, FBI Safe Streets Task Force Member and Hamden Police Officer Dennis Ryan

("Ryan") and FBI Special Agent Anthony Duback ("Duback"). In his description of defendants

on pages five and six of the complaint, Belton also lists Task Force Officer Mark DiaMico

("DiaMico"), the FBI, Hamden Police Department's Special Weapons and Tactics ("SWAT")

Unit, Hamden Police Department's Emergency Services Unit and Hamden Police Department's

Street Interdiction Unit. Although these four defendants are not listed in the caption of the

complaint as required by Rule 10(a), Fed. R. Civ. P., the court will consider the allegations

against them.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints

against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of

Civil Procedure requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has

facial plausibility when a plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that

includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**Allegations**

The following allegations are set forth in the complaint and its exhibits. *See* Compl., ECF No. 1, Exs. A-B & 2-3, ECF Nos. 1-1 to 1-4. On October 13, 2016, Duback and Ryan submitted an affidavit in support of an application for a warrant to search and seize firearms, ammunition, firearm related evidence, a piece of mail to show proof of residence and narcotics located at 28 Dix Street, first floor, in Hamden, Connecticut, to a judge in the Connecticut Superior Court for the Judicial District of New Haven. *See* Ex. 3 at 2-9, ECF No. 1-4. Superior Court Judge Anthony Avallone signed the search warrant later that day. *See id.* at 8.

On October 14, 2016, at approximately 5:50 a.m., Wydra knocked down the door to Belton's residence, located at 28 Dix Street in Hamden, Connecticut, with a battering ram. *See* Compl. at 9 ¶¶ 1, 3; at 15 ¶ 2. Wydra and other defendants then entered Belton's residence dressed in tactical gear and with shields and guns drawn. *See id.* at 9 ¶ 4. Once inside the residence, the defendants screamed and threatened Belton, searched and seized items of his property and arrested Belton. *See id.* ¶¶ 2, 4. Quinn entered Belton's home with his gun and a shield "ready for war, screaming & threatening" Belton. *See id.* at 18.

During the search of the residence, Lupo, Vere and DiAmico observed Belton break a porch window and throw a firearm out the window. *See* Ex. 2 at 3, ECF No. 1-3. The gun

landed on the ground approximately twelve feet from the window. *See id.* The gun was loaded

with six rounds of ammunition. *See id.* at 4. Mansfield found fourteen rounds of ammunition in

a closet of one of the bedrooms of the residence. *See id.* at 4-5. Duback found several bundles

of heroin on the ground outside of the residence directly below the broken window. *See id.* at 4.

Sheppard took Belton down to the ground at gun point. *See* Compl. at 10 ¶ 5. Rivera-

Rodriguez restrained Belton by handcuffing him and transported him to the Hamden Police

Department. *See id.* ¶ 9; Ex. 2 at 5, ECF No. 1-3. Vere seized evidence during the search of

Belton's residence and photographed Belton, his girlfriend and his residence. *See* Compl. at 18.

Vere later made those photographs available to the press and made them part of police files. *See*

*id.*

After Belton arrived at the police station, an officer processed him. See Ex. 2 at 5, ECF

No. 1-3. Belton was charged with two counts of criminal possession of a firearm, one count of

possession of narcotics with intent to sell, one count of illegal manufacture, distribution, sale,

prescription or administration by a non-drug-dependent person, and one count of interfering with

a search warrant. *See id.* at 2. Lupo set Belton's bond at $100,000.00. *See id.* at 5. Three days

later, at Belton's arraignment, a judge increased the amount of the bond to $200,000.00. *See*

Compl. at 11 (¶ 12).

On August 3, 2017, in *State v. Belton*, Case No. CR16-0289351, Judge Alander granted

Belton's motion to suppress the evidence seized during the search of Belton's residence. *See id.*

at 11 ¶¶ 14-15; Ex. B at 2-9, ECF No. 1-2. Belton alleges that Judge Alander subsequently

dismissed all charges against him with prejudice. *See id.* at 11 ¶ 14. State of Connecticut

Department of Correction records reflect Belton is currently serving a sentence of four years and

six months, imposed by a judge on September 6, 2017, pursuant to a plea of guilty to violating a

protective order on March 23, 2016.[1]

Belton sues defendant Hamden Police Department in its official capacity and the other defendants in their individual and official capacities.  *See id.* at 2-6.  For relief, he seeks compensatory and punitive damages.[2]  *See id.* at 10.

**Discussion**

Belton asserts that the defendants violated his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution, his rights under Article First, §§ 7, 8 and 9 of the Connecticut Constitution and his rights under Connecticut General Statutes §§ 54-33a and 54-33f.  He also contends that defendants violated his rights to be free from false arrest, false imprisonment, unlawful restraint, malicious prosecution, wrongful incarceration, unjustified criminal prosecution, excessive force, excessive bond, unlawful entry, illegal search, illegal seizure and police misconduct, deprived him of due process, tampered with and fabricated evidence, prepared a "false affidavit of probable cause" and engaged in conduct that constituted

---

[1]  Information regarding Belton's current confinement may be found on the Department of Correction's website under Inmate Search using his CT DOC Inmate Number 180543. *See* http://www.ct.gov/doc/site/default.asp. Information regarding Belton's September 2017 conviction may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up, Criminal/Motor Vehicle, Convictions – By Docket Number using N23N-CR16-0165650-S.

[2]  Belton also includes an unspecified request for "injunctive/prospective injunctive & declaratory relief." Compl. at 10.  He does not, however, further elaborate on the nature of the relief sought.  In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court held that an exception to the Eleventh Amendment's grant of sovereign immunity from suit existed to permit a plaintiff to sue a state official acting in his or her official capacity for prospective injunctive relief for continuing violations of federal law.  *Id.* at 155-56.  The exception to Eleventh Amendment immunity, however, does not apply to claims against state officials seeking declaratory or injunctive relief for prior violations of federal law.  *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young . . .* to claims for retrospective relief") (citations omitted).
As indicated above, the criminal charges that arose from Belton's arrest on October 14, 2016, have been dismissed.  Absent specified requests for injunctive and declaratory relief, the court cannot discern what type of injunctive or declaratory relief might be appropriately awarded to Belton if he prevails in this action.  Thus, the court construes the complaint as seeking only monetary damages from the defendants.

libel, defamation and intentional infliction of emotional distress.  *See* Compl. at 12.[3]

**Hamden Police Department and Units**

Belton names the Hamden Police Department as well as its SWAT Unit, its Emergency

Services Unit and its Street Interdiction Unit as defendants.  A municipal police department is

not an independent legal entity and is not subject to suit under section 1983. *See Rose v. City of*

*Waterbury*, Civil Action No. 3:12cv291(VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21,

2013) (noting that courts within Connecticut have determined that state statutes do not include

"provision[s] establishing municipal departments, including police departments, as legal entities

separate and apart from the municipality they serve, or providing that they have the capacity to

sue or be sued . . . it is the municipality itself which possesses the capacity to sue and be sued")

(internal quotation marks and citation omitted).  Furthermore, a police department is not a person

amenable to suit under 42 U.S.C. § 1983.  *See Nicholson v. Lenczewski*, 356 F. Supp. 2d 157,

164 (D. Conn. 2005) (collecting cases).  Thus, any claims against the Hamden Police

Department, the Hamden Police SWAT Unit, Hamden Police Emergency Service Unit and

Hamden Police Street Interdiction Unit are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Official Capacity Claims – Municipal Defendants**

Belton sues the municipal defendants in their individual and official capacities for

monetary damages for violations of his federal Constitutional rights.  In *Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 691 (1978), the Supreme Court set forth the test for municipal liability.  To

---

[3] In a conclusory statement on page twelve of the complaint, Belton alleges that the defendants engaged in police
misconduct.  He does not otherwise describe or elaborate on this claimed violation or specifically indicate which
defendant or defendants engaged in police misconduct.  To the extent that this claim is separate from Belton's other
allegations involving the defendants' conduct during the search of his residence, his arrest and his prosecution on
criminal charges in state court, the claim is conclusory and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  *See*
*Iqbal*, 556 U.S. at 678 (A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the
elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the
facial plausibility standard.)

establish municipal liability for the allegedly unconstitutional actions of a municipal employee, the plaintiff must "plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted). A municipality cannot be held liable under 42 U.S.C. § 1983 solely for the acts of its employees. *See Monell*, 436 U.S. at 694-95. Plaintiff must demonstrate "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Any claim against a municipal official or employee in his official capacity is considered to be a claim against the municipality. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Belton has not described any conduct on the part of the municipal defendants that is attributable to a municipal custom, practice or policy which resulted in the deprivation of his constitutional rights. The incident that Belton describes regarding the search of his residence, seizure of property and his arrest is an isolated occurrence. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy") (internal quotation marks and citation omitted).

Accordingly, the claims against Wydra, Sullivan, Kicak, Crawford, Goclowski, Quinn, Hall, Mastropetre, Hallstrom, Mellon, Sheppard, Lupo, Baruto, Mansfield, Rivera-Rodriguez, Vere, DiAmico and Ryan in their official capacities for monetary damages for violations of his federal Constitutional rights are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Official Capacity Claims – Federal Defendants Duback and FBI**

In *Bivens*, the Supreme Court held that federal officials may be sued for damages in their individual capacities for the violations of a person's constitutional rights. *Id.* at 397. Thus, a *Bivens* action is the nonstatutory federal counterpart of a civil rights action pursuant to 42 U.S.C. § 1983. *See Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981).

A *Bivens* claim may not, however, be brought against the United States or its agencies or a federal official in his official capacity for federal Constitutional violations. *See FDIC v. Meyer*, 510 U.S. 471, 484-85 (1994) (declining to extend *Bivens* to federal agencies); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 509-10 (1994) (Bivens action must be brought against federal official in his or her individual capacity only). The doctrine of sovereign immunity protects the United States from suit absent consent. *See Meyer*, 510 U.S. at 475.

Neither the FBI nor Dubak has waived sovereign immunity. Accordingly, all claims against the FBI and Duback in his official capacity for monetary damages are dismissed. *See* 28 U.S.C. § 1915A(b)(2). *See also Robinson*, 21 F.3d at 510 ("Because an action against a federal agency or federal officials in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." (citations omitted).

**Fifth and Sixth Amendments**

In the first paragraph of the "Statement of Case" on page nine of the complaint, Belton alleges that the defendants violated his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. He does not otherwise make reference to violations of his Fifth or Sixth Amendment rights in the remaining pages of the complaint. There are no allegations to support plausible claims under either the Fifth or Sixth Amendments

against any defendant.  Thus, the Fifth and Sixth Amendment claims are dismissed. *See* 28

U.S.C. § 1915A(b)(1).

### Fourth Amendment Entry, Search and Seizure Claims

The Fourth Amendment protects the rights of the people "to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

The protections of the Fourth Amendment are made applicable to the states by the Fourteenth

Amendment.  Under both federal law and Connecticut law, probable cause to search is

demonstrated where the totality of circumstances indicates a "fair probability that contraband or

evidence of a crime will be found in a particular place."  *Walczyk v. Rio,* 496 F.3d 139, 156 (2d

Cir. 2007) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983) and citing *United States v.*

*Gaskin,* 364 F.3d 438, 456 (2d Cir. 2004); *State v. Vincent,* 229 Conn. 164, 171, 640 A.2d 94, 98

(1994) (noting that valid search requires "probable cause to believe that the particular items to be

seized are connected with criminal activity or will assist in a particular apprehension or

conviction" and "that the items sought to be seized will be found in the place to be searched").

Belton contends that defendants violated his Fourth Amendment right to be free from an

illegal search and seizure when they entered his residence, searched it and seized his property

pursuant to a search warrant that lacked probable cause.  If a search has been conducted pursuant

to a court-authorized warrant, "great deference" is due to the issuing judge's determination that

there is probable cause to search a premises.  *United States v. Leon*, 468 U.S. 897, 914 (1984).

Thus, "the issuance of a warrant by a neutral magistrate, which depends on a finding of probable

cause, creates a presumption that it was objectively reasonable for the officers to believe that

there was probable cause...."  *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991);

*see also Walczyk,* 496 F.3d at 155–56 ("Ordinarily, an arrest or search pursuant to a warrant

issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause.")

To overcome this presumption, a plaintiff must make a "'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was 'necessary to the finding of probable cause.'" *Golino*, 950 F.2d at 870 (quoting *Franks v. Deleware*, 438 U.S. 154, 155-56 (1978)). The standard in *Franks* also "applies in civil cases, like this one, brought pursuant to § 1983, in which a plaintiff seeks to challenge a warranted search as unlawful." *Calderon v. City of New York*, 2015 WL 2079405, at *5 (S.D.N.Y. 2015); *see also McColley v. Cty. of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014) (same). In addition, a plaintiff may overcome the presumption that a search executed pursuant to a warrant issued by a judge is based on probable cause by showing that the search warrant affidavit on its face "was so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986) (citing *Leon*, 468 U.S. at 923).

Belton states that the arrest warrant affidavit contained a false statement regarding his prior conviction on a gun possession charge. He also claims that it was unreasonable for the defendants to believe that the affidavit contained sufficient information to support the existence of probable cause. *See Briggs*, 475 U.S. at 344–45 ("where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, ... the shield of [qualified] immunity [will] be lost"). At this stage of the proceedings, Belton has plausibly alleged that defendants violated his right to be free from an unreasonable search and seizure under the Fourth Amendment when they entered and searched his residence and seized items

from the residence pursuant to a warrant that lacked probable cause. This Fourth Amendment claim will proceed against all defendants.

**Fourth Amendment Seizure and Privacy Claims against Officer Vere**

Belton alleges that Vere photographed his residence, himself and his girlfriend and made the photographs part of police files and also made them available to the press.[4] The Supreme Court has "expressly held that the Fourth Amendment governs not only the seizure of tangible items," but also extends to the seizure of intangibles. *Katz v. United States*, 389 U.S. 347, 353 (1967). Indeed, capturing a person's image through a recording device constitutes a seizure under the Fourth Amendment. *See Caldarola v. County of Westchester,* 343 F.3d 570, 574-75 (2d Cir. 2003) (citation omitted). Thus, Belton has plausibly alleged that the photographs of himself and his residence by Officer Vere constituted a seizure under the Fourth Amendment. *See Warren v. Williams*, No. CIV.A. 304CV537 (JCH, 2006 WL 860998, at *19 (D. Conn. Mar. 31, 2006) (denying officers' summary judgment motion as to claim that the head-shot photographs taken of plaintiffs during the search of motorcycle clubhouse constituted unreasonable seizures under the Fourth Amendment because the photographs were beyond the scope of the search warrant and lacked any other legitimate purpose.) Furthermore, if the photograph of Belton was, as alleged, disseminated to the press, Belton has plausibly alleged a Fourth Amendment right to privacy violation. *See Caldarola*, 343 F.3d at 574-75; *Lauro v. Charles*, 219 F.3d 202, 212 (2d Cir. 2000). Accordingly, these Fourth Amendment will proceed.

**Section 1983/*Bivens* - False Arrest and Imprisonment, Unlawful Restraint Claims**

---

[4] Belton's girlfriend is not listed as a plaintiff in the caption of the complaint and she did not sign the complaint. Compl. at 1, 19. Because an individual, who is not an attorney, may not assert claims on behalf of others, the court does not construe the complaint as raising a Fourth Amendment claim by Belton's girlfriend. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) ("Another prudential [limit on standing is the] principle is that a plaintiff may ordinarily assert only his own legal rights, not those of third

False arrest and false imprisonment claims brought pursuant to section 1983 as violations of the Fourth Amendment's right "to be free from unreasonable seizures, are substantially the same as claims for false arrest . . . under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citations omitted). In a section 1983 action, the elements of claims for false arrest are controlled by state law. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). District courts are encouraged to incorporate Section 1983 law into their assessment of *Bivens* claims because *Bivens* claims are very similar to claims brought under section 1983 "in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). Thus, in considering Belton's claims for false arrest and false imprisonment brought pursuant to *Bivens* against Duback and the municipal police defendants pursuant to section 1983, the court will assess both claims under Connecticut the law. *See Davis v. United States,* 430 F. Supp. 2d 67, 79, 80 (D. Conn. 2006) (false arrest and malicious prosecution claims filed "pursuant to § 1983 or *Bivens* are governed by state substantive law") (citation omitted).

Connecticut law defines false arrest or false imprisonment as "the unlawful restraint by one person of the physical liberty of another.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (internal quotation marks and citation omitted). The law applicable to false imprisonment and false arrest "'is identical.'" *Id.* (quoting *Outlaw v. City of Meriden,* 43 Conn. App. 387, 392, 682 A.2d 1112, 1115 (1996)). In addition, to state a constitutional claim, a plaintiff must also demonstrate "an unreasonable deprivation of liberty." *See Walker v. Sankhi*, 494 F. App'x. 140, 142 (2d Cir. 2012).[5]

---

parties."); *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another's behalf in the other's cause.")

[5] Belton includes unlawful restraint in addition to false arrest and false imprisonment. Because the

The fourth Amendment is violated when someone is arrested without probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Conversely, "probable cause is an absolute defense to a false arrest claim." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)). "[F]ederal and Connecticut law are identical in holding that probable cause to arrest exists when police officers have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Walczyk,* 496 F.3d at 156 (quoting *Weyant,* 101 F.3d at 852 and citing *State v. James,* 261 Conn. 395, 415, 802 A.2d 820, 833 (2002) ("Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a [crime] has been committed.")).

Belton's arrest was based on the firearm, ammunition and narcotics seized during the search of his residence. Belton argues that because the evidence from the search was suppressed, there was no probable cause for his arrest and that the state criminal action terminated in his favor. "The Second Circuit, however, has squarely rejected the theory that evidence that is the 'fruit of the poisonous tree' so as to warrant suppression in a criminal trial must be excluded for purposes of assessing probable cause in a civil § 1983 action." *Magnum v. City of New York*, No. 15-CV-8810, 2016 WL 4619104, at *7 (S.D.N.Y. Sept. 2, 2016) (citing *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999)). In *Townes,* the Court explained that the purpose of the exclusionary rule in criminal cases is to deter future police misconduct, whereas "[t]he basic

definition of false arrest and false imprisonment includes the element of unlawful restraint of another, the court does

purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Townes,* 176 F.3d at 147 (internal quotation marks and citations omitted). Thus, the court held, "[n]o Fourth Amendment value would be served if [plaintiff], who illegally possessed firearms and narcotics, reaps the financial benefit he seeks. [Plaintiff] has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment." *Id.* at 148. (footnote and citations omitted).

Although the firearm, ammunition and drugs found during the search of Belton's residence were later suppressed, at the time of the search, the seizure of those items constituted probable cause for Belton's arrest on charges of possession of narcotics, possession of a firearm and ammunition and distribution of narcotics. *See also Pickering v. DeFrance,* No. 3:14-CV-01207 (VLB), 2016 WL 5799293, at *8 (D. Conn. Sept. 30, 2016) (noting plaintiff could not rely on fact that arrest was made pursuant to illegal vehicle stop as support for false arrest claim because "Second Circuit has expressly declined to apply [the fruit of the poisonous tree doctrine] to support a section 42 U.S.C. § 1983 claims") (citations omitted)

Because probable cause existed to arrest Belton on both the drug and gun charges, he does not plausibly allege false arrest or false imprisonment claims and these claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Section 1983/*Bivens* – Malicious/Unjustified Criminal Prosecution Claims

Belton includes both a malicious prosecution claim and an unjustified criminal prosecution claim in his lists of claims. Because it is apparent that the claim of unjustified prosecution is just another way of asserting a malicious prosecution claim, the unjustified

---

not consider unlawful restraint as a separate claim.

criminal prosecution claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

Belton generally asserts that all defendants violated his rights by engaging in malicious prosecution.  He does not include any specific allegations regarding his malicious prosecution claim, except with regard to Duback, Ryan and Mastropetre.  Thus, any claims of malicious prosecution against Wydra, Sullivan, Kicak, Crawford, Goclowski, Quinn, Hall, Hallstrom, Mellon, Sheppard, Lupo, Baruto, Mansfield, Rivera-Rodriguez, DiaMico and Vere are conclusory and are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  *See Iqbal*, 556 U.S. at 678 (A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.)

Like false arrest and false imprisonment claims, a malicious prosecution claim brought pursuant to section 1983 or *Bivens* as a violation of the Fourth Amendment's right "to be free from unreasonable seizures, is substantially the same as a claim for malicious prosecution under state law."  *Jocks*, 316 F.3d at 134 (internal quotation marks and citations omitted); *Davis,* 430 F. Supp. 2d at 80 (false arrest and malicious prosecution claims filed "pursuant to § 1983 or *Bivens* are governed by state substantive law") (citation omitted).  To state a claim for malicious prosecution under Connecticut law, plaintiff must prove four elements: "(1) the defendant initiated or continued criminal proceedings against [him]; (2) the criminal proceeding terminated in favor of [him]; (3) 'the defendant acted without probable cause'; and (4) 'the defendant acted with malice.'"  *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) *(*quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815, 817 (1982)).  The plaintiff must also have suffered a sufficient post-arraignment deprivation of liberty implicating his Fourth Amendment rights.  *See Jocks*, 316 F.3d at 136.  The existence of probable cause is a

complete defense to claim for malicious prosecution. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014).

Belton alleges that Ryan, Duback and Mastropetre initiated a prosecution against him by unlawfully searching his residence without probable cause, arresting him for possession of a gun, ammunition and narcotics and leaving him in prison for almost a year until a judge granted a motion to suppress the evidence seized during the search. Belton claims that the prosecution terminated in his favor when the judge dismissed the criminal charges against him after granting his motion to suppress.

In *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003), decided four years after *Townes*, the Second Circuit clarified that "probable cause" in the malicious prosecution context means "probable cause to believe that [the prosecution] could succeed." *Id.* at 76. The Second Circuit held that if the evidence giving rise to the prosecution "would clearly not be admissible," then "there [is] no probable cause to believe [a] prosecution could [have] succeed[ed]." *Boyd*, 336 F.3d at 77. The decision in *Boyd* does not mention *Townes*, but suggests that a defendant could not rely on evidence obtained in violation of a plaintiff's Fourth Amendment rights to demonstrate probable cause to defeat a malicious prosecution claim in a civil rights action.

District courts within the Second Circuit are split on whether the holding in *Townes* also applies to malicious prosecution claims. *Compare Vasquez v. Reilly*, No. 15-CV-9528 (KMK), 2017 WL 946306, at *9 (S.D.N.Y. Mar. 9, 2017) (noting that the Second Circuit in *Townes* did not "say, or even suggest, that illegally obtained evidence could be used to establish probable cause in defense of a malicious prosecution claim"); *Penree v. City of Utica*, No. 13-CV-1323, 2016 WL 915252, at *18 (N.D.N.Y. Mar. 4, 2016) ("[E]vidence obtained illegally that 'would clearly not be admissible' cannot then be the basis for probable cause to believe the prosecution

could succeed" )(quoting *Boyd*, 336 F.3d at 77)), *aff'd in part and dismissing appeal in part*, 694 F. App'x 30 (2d Cir. 2017); *Gannon*, 917 F. Supp. 2d at 244-45 (citing *Boyd* and denying the defendants' motion to dismiss where the "[p]laintiff clearly allege[d] that [the defendant] filed charges against [the] [p]laintiff after the arrest pursuant to an unlawful search and that a criminal proceeding was terminated in [the] [p]laintiff's favor"); *Mazyck v. Johnson*, No. 08-CV-548, 2009 WL 2707360, at *5 (E.D.N.Y. Aug. 25, 2009) (relying on *Boyd* and rejecting the defendants' argument based on *Townes* because "the question is not whether there exists probable cause to prosecute, but rather whether there is probable cause to *believe that a prosecution will succeed*") (emphasis in original), *with Mangum*, 2016 WL 4619104, at *7 (dismissing malicious prosecution claim where probable cause was supplied by fruits of unlawful search); *Hardy v. Baird*, No. 13-CV-7402 (NSR), 2016 WL 2745852, at *10 (S.D.N.Y. May 10, 2016) (granting summary judgment to defendants on false arrest and malicious prosecution claims where a "purportedly unlawful search" of plaintiff's purse revealed "prescription pills in an unmarked prescription pill bottle," which furnished the probable cause for her arrest); *Cyrus v. City of New York*, No. 06-CV-4685, 2010 WL 148078, at *4 (E.D.N.Y. Jan. 14, 2010) (denying motion for reconsideration of dismissal of malicious prosecution claim because "court's conclusion that the exclusionary rule d[id] not apply to the probable cause determination in malicious prosecution claims [was] fully supported by the decisions cited for support.") (internal quotation marks omitted), *aff'd*, 450 F. App'x 24, 26 (2d Cir. 2011). Although the Second Circuit has affirmed a district court's application of *Townes* to a malicious prosecution claim, that decision was a summary order. *See Cyrus v. City of New York*, 450 F. App'x 24, 26 (2d Cir. 2011).

The issues of whether *Townes* applies to malicious prosecution claims and whether *Boyd*, which interpreted elements of a malicious prosecution claim under New York law, applies to a malicious prosecution claim under Connecticut law are better left for resolution on consideration of a motion to dismiss or for summary judgment. Accordingly, at this stage of the proceedings, the court will permit the malicious prosecution claim to proceed against Ryan, Duback and Mastropetre in their individual capacities.

**Fourth, Eighth and Fourteenth Amendments - Excessive Force**

Belton asserts three different claims of excessive force against defendants. He characterizes his excessive force claims as violations of the Eighth, Fourth and Fourteenth Amendments. The Eighth Amendment, however, applies to the punishment of convicted offenders and does not regulate pre-conviction interactions between the police and the public. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In addition, in the context of the police use of force against a citizen during an arrest or other law enforcement action, the force used is evaluated under the Fourth Amendment rather than as a substantive due process claim under the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394-95 & n.10 (1989). Thus, the claim of excessive force during the search of Belton's residence is not cognizable under the Eighth or Fourteenth Amendments and those claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The factors to be considered when evaluating an excessive force claim under the Fourth Amendment include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. As the Supreme Court has explained, whether law enforcement officers' use of force is "excessive" must be judged by "whether the officers'

actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397.

### Sheppard

Belton alleges that Sheppard took him to the ground at gun point and threatened to shoot him. Belton has plausibly alleged a Fourth Amendment excessive force claim against Sheppard.

### Quinn, Mastropetre and Ryan

Belton contends that other defendants, including Quinn, Mastropetre and Ryan, entered his home screaming and threatening him and with their weapons drawn and that this conduct constitutes excessive force. However, "merely drawing weapons when effectuating an arrest does not constitute excessive force as a matter of law." *Dunkelberger v. Dunkelberger,* No. 14–CV–3877, 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015); *see also Pittman v. City of New York,* No. 14–CV–4140, 2014 WL 7399308, at *9 n.12 (E.D.N.Y. Dec. 30, 2014) ("[T]he fact that the officers approached the car with their guns drawn does not support a claim of excessive force."); *Pelt v. City of New York,* No. 11–CV–5633, 2013 WL 4647500, at *13 (E.D.N.Y. Aug. 28, 2013) ("Because Plaintiff alleges nothing beyond mere threats of force, Plaintiff's excessive force claim fails."); *Mittelman v. Cty. of Rockland,* No. 07 Civ. 6382, 2013 WL 1248623, at *13 (S.D.N.Y. Mar. 26, 2013) ("[T]hreat of force does not constitute excessive force."). Belton does not allege Quinn, Mastropetre and Ryan used physical force against him. Thus, the claim that Quinn, Mastropetre and Ryan and other defendants used excessive force by entering his

residence yelling and threatening him with their guns drawn are dismissed.  *See* 28 U.S.C. §
1915A(b)(1).

### Ryan, Wydra, Duback and Lupo

Belton alleges that Ryan informed other officers at a briefing before the execution of the
search warrant that he should be considered armed and dangerous because he had been
committing robberies with a firearm.  Belton suggests that Wydra, Duback and Lupo also
informed other defendants that he was armed and dangerous.  Belton claims that this statement as
well as the false statement in the arrest warrant affidavit that he had been previously convicted of
possession of a firearm encouraged other officers to potentially use excessive force against him
during the execution of the search warrant.

Belton does not allege that any defendant other than Sheppard used force against him
during the search.  Furthermore, the police incident report attached to the complaint suggests that
Belton was in fact armed at the time of the search as officers observed him throw a gun out a
window of his residence.  See Ex. 2 at 5, ECF No. 1-3.  Because no defendant ordered any other
defendant to use excessive force against Belton and there are no allegations that defendants were
aware that excessive force might be used by any of the other defendants, the allegations
regarding the warnings issued by Ryan, Duback, Wydra and Lupo prior to the search that Belton
should be considered armed and dangerous and the statement regarding a prior gun possession
conviction in the search warrant affidavit fail to state a claim of excessive force.  *See Davis v.
Cheverko*, No. 16-CV-4034 (KMK), 2017 WL 6397749, at *5 (S.D.N.Y. Dec. 13, 2017)
(dismissing excessive force claim against sergeant because no allegation sergeant ordered use of
force, was aware of use of force by other officers or had knowledge that other officers had
history of using excessive force); *Sash v. United States*, 674 F. Supp. 2d 531, 544-45 (S.D.N.Y.

2009) (finding no direct participation in alleged use of force when the plaintiff did not "contend that [the supervisory defendants] ordered [the other defendants] to use excessive physical force" or that the supervisory defendants had knowledge other defendants would use excessive force). This claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Excessive Bond**

The Eighth Amendment requires that when bail is granted, it may not "impose restraints that are more than necessary to achieve the government's interest[,] ... [in] preventing risk of flight and danger to society or children." *United States v. Polouizzi*, 697 F. Supp. 2d 381, 390 (E.D.N.Y. 2010) (citing *United States v. Salerno,* 481 U.S. 739, 754 (1987)). The Supreme Court has held that the term "excessive" means "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian,* 524 U.S. 321, 334 (1998); *Salerno,* 481 U.S. at 754-55 ("[B]ail must be set by a court at a sum designated to ensure th[e] goal [of preventing flight], and no more.").

Belton claims that after he had been arrested and transported to the police station, Lupo set his bond at $100,000.00. He contends that the bond amount was excessive. Three days later at Belton's arraignment, a judge increased the bond to $200,000.00.

Connecticut General Statutes § 54-63c permits a police officer to set a bail after the arrest of a person for certain bailable offenses and Connecticut General Statutes § 54-64a permits Superior Court judges to set a bond, in no greater amount than necessary, during arraignment or a subsequent proceeding. Thus, Lupo was statutorily authorized to set bond under Conn. Gen. Gen. § 54–63c.

In *Sanchez v. Doyle*, 254 F. Supp. 2d 266 (D. Conn. 2003), the court considered a claim that a state prosecutor and a state trooper had acted intentionally and maliciously in setting the

amount and conditions of the plaintiff's bail following the plaintiff's arrest..  The court found

that "[s]etting bail is a judicial act" and that the state trooper's role in setting the plaintiff's bail

was "'functionally comparable to that of a judge.'"  *Id.* at 271 (quoting *Butz v. Economou,* 438

U.S. 478, 513 (1978)).  After examining the functions of law enforcement officials under the bail

statute, the court determined that officers "cannot be said to perform merely administrative

functions such as scheduling or making recommendations ... but rather are serving independent

judicial functions replete with the exercise of independent judgment in setting and reviewing bail

conditions."  *Sanchez,* 254 F. Supp. 2d at 272.  The court also examined whether the state trooper

had "acted in the clear absence of all jurisdiction" and concluded that he had not done so.  *Id.* at

272-73.  Thus, the court held that the state trooper was entitled to absolute immunity in setting

the plaintiff's bond. *Id.* at 270-73.

 Other judges within this district and the Second Circuit have followed the reasoning in

*Sanchez*.  *See Walczyk*, 496 F.3d at 165 (affirming district court's dismissal of excessive bail

claim on ground that "setting bail is a judicial function . . . [and] absolute immunity extends to

police officers when they perform [bail setting] function pursuant to" Conn. Gen. Stat. § 54–

63c), *Minney v. Kradas,* No. 3:01CV1543(EBB), 2004 WL 725330, at *4 (D. Conn. Mar. 31,

2004)(defendant officer was absolutely immune from plaintiff's § 1983 lawsuit alleging that the

cash bond set by defendant officer was excessive in violation of the Eighth Amendment);

*Bacchiocchi v.. Chapman,* No. 3:02CV1403(JCH), 2004 WL 202142, at *6–7 (D. Conn. Jan. 26,

2004) (defendant police officer was entitled to absolute immunity from plaintiff's claim that

defendant set his bail at an excessive level in violation of the Eighth Amendment); *Clynch v.

Chapman*, 285 F. Supp. 2d 213, 220 (D. Conn. 2003) (concluding that the officers were

absolutely immune from § 1983 actions "related to performing the bail setting function assigned

to Connecticut police officers under Conn. Gen. Stat. § 54–63c"). The court is persuaded by the reasoning in *Sanchez*.

Lupo set bond for Belton pursuant to his statutory authority under Conn. Gen. Gen. § 54–63c. There are no facts to suggest that Lupo acted "in the clear absence of all jurisdiction," in setting Belton's bond at $100,000.00. *Tucker v. Outwater,* 118 F.3d 930, 933 (2d Cir. 1997). Thus, the court concludes that Lupo is entitled to absolute immunity and the claim of excessive bond under the Eighth Amendment is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Tampering with and Fabricating Evidence**

In his list of claims on page twelve of the complaint, Belton alleges that the defendants tampered with and fabricated evidence. Belton asserts no facts in support of these claims. The exhibits to the complaint reflect that various items were seized as evidence during the search of Belton's residence on October 14, 2016. See Ex. 2 at 5, ECF No. 1-3. There are no other allegations regarding these items of evidence. Accordingly, the claims of tampering with and fabrication of evidence lack an arguable factual or legal basis and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Fourteenth Amendment Due Process**

Belton generally alleges that the defendants violated his due process rights during the search of his home and his arrest on October 14, 2016. See Compl. at 13 ¶ 5, at 15-16 & at 17 ¶ 3. In paragraph eleven of the complaint, Belton contends that he "was wrongfully incarcerated & denied due process of the law & exposed to Decades of prison time." *Id.* at 11 ¶ 11 (emphasis omitted). To the extent that Belton is attempting to argue that his false arrest/false imprisonment violated his right to substantive due process, the Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a

particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham*, 490 U.S. at 395). Because the Fourth Amendment provides a more explicit textual source of constitutional protection for Belton's' claims of illegal search and seizure and false arrest, the Fourteenth Amendment substantive due process claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Conspiracy Claim**

Belton alleges that Ryan, Wydra and Duback conspired with an undercover informant to intentionally injure him. He claims that despite the fact that "all evidence was unreliable," Ryan, Wydra, Duback and a confidential informant "planned, plotted and choreographed his arrest & [the] illegal search" of his residence. Compl. at 14.

To prevail on a conspiracy claim under § 1983, the plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal, causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

Belton has alleged and provided evidence that Ryan and Duback submitted an affidavit in support of the application for a warrant to search his residence for firearms, ammunition and narcotics. The affidavit was based on statements of several confidential informants as well as

observations of the affiants. A state court judge granted the application for a search warrant and

Duback, Ryan and other officers subsequently searched Belton's residence, seized items in the

residence and arrested Belton. Approximately ten months later, a different state court judge

granted a motion to suppress the items seized on the ground that the affidavit in support of the

application for a search warrant lacked probable cause to believe that firearms and narcotics

would be present at Belton's residence. Belton has stated a plausible claim §1983 conspiracy

claim against Duback and Ryan and claim will proceed as to Ryan and Duback in their

individual capacities.

There are no facts to suggest that Wydra was involved in preparing the application for the

search warrant, that he provided information in support of the affidavit in support of the

application or that he was aware that the information in search warrant affidavit was somehow

insufficient to support probable cause for the search. Thus, Belton has not alleged that Wydra

acted together with Duback and Ryan to violate his constitutional rights. The conspiracy claim is

dismissed as to Wydra. *See* 28 U.S.C. § 1915A(b)(1).

**State Law Claims**

Belton alleges that the defendants violated his rights under the Connecticut Constitution,

his rights under two Connecticut statutes and his rights under Connecticut common law. This

court has the discretion to exercise supplemental jurisdiction over state law claims pursuant to 28

U.S.C. § 1367(a), which provides in pertinent:

> [I]n any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original jurisdiction that they form part
> of the same case or controversy under Article III of the United States
> Constitution.

A district court has jurisdiction over all claims in an action, including state law claims, if the

federal and state law claims "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

### Connecticut Statutory Claims – All Defendants

Belton states that defendants violated his rights under Conn. Gen. Stats. **§§** 54–33a and 54-33f. Section 54-33f of the Connecticut General Statutes provides that a person may file a motion to suppress evidence seized illegally pursuant to a warrant or without a warrant and may also seek the return of the unlawfully seized property. Belton does not include any facts with regard to the return of the property seized from his residence on October 14, 2016. Because he has not alleged that he invoked the procedure under Conn. Gen. Stats. **§** 54–33f to seek the return of an unlawfully seized property or that any defendant refused to return the property seized during the search of his residence, he has not alleged a violation of his rights under this statute. The claim under Connecticut General Statutes § 54-33f is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Section 54-33a of the Connecticut General Statutes authorizes a judge or judge trial referee, to issue a search warrant upon the sworn affidavit of the complainant or complainants establishing the grounds for issuing the warrant, if the judge or judge trial referee is satisfied that grounds for the application exist or that there is probable cause to believe that grounds for the application exist. This statute is not applicable to the conduct of the defendants who are law enforcement officials. Accordingly, the claim under Connecticut General Statutes § 54-33a is dismissed. *See* 28 U.S.C. § 1915A(b)(1).[6]

---

[6] Belton has not named the judge who issued the warrant as a defendant. Nor will the court permit Belton to add the judge as a defendant as there are no facts to suggest that the judge was acting outside the scope of his judicial function when he issued the warrant. As such, he

### Connecticut Constitutional and Tort Claims - Duback

Belton asserts that Duback violated his rights under Article First, §§ 7, 8 and 9 of the Connecticut Constitution. He also generally asserts tort claims of false arrest, malicious prosecution, defamation, libel and intentional infliction of emotional distress against Duback. As indicated above, Duback is a Special Agent employed by the FBI. The Federal Tort Claims Act ("FTCA") provides the exclusive remedy for persons injured by the negligent or wrongful actions of federal employees, including common law torts, acting in the scope of their employment. *See* 28 U.S.C. §§ 1346(b)(1), 2679(a),(b)(1); 28 U.S.C. 2680(h). Pursuant to 28 U.S.C. § 1346(b)(1) of the FTCA, a plaintiff may sue the government to recover: "money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(2).

District courts within the Second and other Circuits have held that state constitutional claims are included within state law claims subject to the provisions of the FTCA. *See Tyus v. Newton*, No. 3:13-CV-1486 (SRU), 2015 WL 5306550, at *5–6 (D. Conn. Sept. 10, 2015) (granting motion to dismiss state law claims, including claims under the Connecticut Constitution because plaintiff had alleged that he had exhausted his administrative remedies

---

would be entitled to judicial immunity. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (judges are immune from suit, not just from the ultimate assessment of damages and immunity applies even to claims that a judge acted in bad faith, erroneously, maliciously or "in excess of his authority"); *DiBlasio v. Novello*, 344 F.3d 292, 297 (2d Cir. 2003) ("[O]nce a court determines that an official was functioning in a core judicial or prosecutorial capacity, absolute immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.")(citations and internal quotation marks omitted).

under the FTCA prior to filing suit); *Hartmann v. Hanson*, No. C 09-03227 WHA, 2010 WL 335677, at *6 (N.D. Cal. Jan. 22, 2010); ("Where such constitutional tort claims are made against federal officers, alleged violations of the federal constitution are treated as *Bivens* claims, while alleged violations of the state constitution are treated as FTCA claims.") (citing *Papa v. United States,* 281 F.3d 1004, 1010 n. 20 (9th Cir.2002)); *Salafia v. United States*, 578 F. Supp. 2d 435, 442 (D. Conn. 2008) (treating Connecticut constitutional claims against federal defendant as claims properly brought under the FTCA and not as is "as separate, stand-alone claims.") (citations omitted).

The United States, rather than the federal agency or the federal employee is the proper defendant in a suit seeking monetary damages for violations of state law committed by a federal employee. *See* 28 U.S.C. §§ 1346(b)(1) and 2674. Belton has not named the United States as a defendant.

Furthermore, an FTCA claim against the United States may not be asserted in the federal court unless the plaintiff has first exhausted his or her administrative remedies. *See* 28 U.S.C. § 2675(a). ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency"); 28 U.S.C. § 2401(b) ("[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues"). Consequently, a plaintiff's failure to pursue a claim for damages for violations of state law with the appropriate agency in a timely manner precludes the

district court from exercising jurisdiction over such a claim.  *See Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.1983).

There are no allegations to suggest that Belton has exhausted any FTCA claim with regard to his tort claims or Connecticut Constitutional claims prior to filing this action. Accordingly, because the court lacks subject matter jurisdiction over Belton's state law claims against Duback, those claims are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### Connecticut Constitutional Claims - Municipal Defendants

Belton alleges that the municipal defendants violated his rights under Article First, §§ 7, 8 and 9 of the Connecticut Constitution.  Article First, § 8 sets forth various rights of an individuals who has been accused of committing a crime, including the right to be informed of the criminal charges against him or her, the right to confront witnesses, the right to be released on bail and the right to a speedy trial.  *See* Conn. Const. art. I, § 8a.  In addition, it sets forth right of individuals who are victims of crimes.  *See* Conn. Const. art. I, § 8b.  Article First, § section 7 of the Connecticut Constitution essentially mirrors the Fourth Amendment's search and seizure clause and provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures."  Conn. Const. art. 1, § 7.  Article First, § 9 provides that: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."  Conn. Const. art. 1, § 9.

### Article First, Section 8

Belton does not allege any facts to support of his contention that defendants violated his rights under Article First, § 8 of the Connecticut Constitution.  Furthermore, there are no cases in which a Connecticut court has recognized a private right of action under Article First, § 8 of the Connecticut Constitution.  *See Fago v. Devin*, No. HHD-CV-146053659S, 2015 WL 5135940, at

*3 (Conn. Super. Ct. July 31, 2015) (noting Connecticut courts "have rejected a private cause of action under article first, § 8 of the Connecticut constitution") citing *ATC Partnership v. Windham*, 251 Conn. 597, 612–17 (1999)) (collecting cases); *Crowley v. Town of Enfield*, No. 3:14 cv 01903 (MPS), 2015 WL 4162435, at *3 (D. Conn. July 9, 2015) (declining to recognize a private right of action under Article First, §§ 8 and 20); *Marinella v. Town of Darien,* No. 3:07–cv–910(CFD), 2010 WL 3123298, at *5 (D. Conn. Aug. 9, 2010) (no cause of action under Article I, sections 8 or 10 of the Connecticut constitution); *Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001) ("The court finds there is no private cause of action for monetary damages under the equal protection and due process provisions (Art. First, §§ 1, 8, 20) of the Connecticut Constitution.").  Accordingly, the claim under Article First, § 8 of the Connecticut Constitution is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

## Article First, Sections 7 and 9

In *Binette v. Sabo*, 244 Conn. 23, 47-49, 710 A.2d 688, 689 (1998), the Connecticut Supreme Court recognized a private cause of action for monetary damages under Article I, sections 7 and 9 of the Connecticut Constitution for illegal searches and seizures of private homes by police officers.  The court emphasized, however, that its holding "does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47.

The court has already concluded that the Fourth Amendment search and seizure and excessive force claims will proceed.  Because the claims under article I, sections 7 and 9 of the Connecticut Constitution arise from the same set of facts as the Fourth Amendment search and seizure and excessive force claims, the court will exercise supplemental jurisdiction over those claims.  Thus, the claims under article I, sections 7 & 9 of the Connecticut Constitution shall

proceed at this time against the defendants in their individual capacities.

## Common Law Claims – Municipal Defendants

The complaint includes two tort claims. Belton alleges that municipal defendants engaged in libel and defamation and the intentional infliction of emotional distress.

### Defamation and Libel

"Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation." *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014). Under Connecticut law, to state a claim of defamation, "a plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Id.*

There is no mention of or reference to claims of libel or defamation other than on page twelve of the complaint. Nor does Belton indicate the nature of the alleged defamatory statement or statements or which defendant or defendants made such a defamatory statement. The claims of libel and defamation which are unsupported by any facts lack an arguable legal or factual basis and do not meet the plausibility standard set forth in *Iqbal*. *See id.* 556 U.S. at 678 (A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.) The conclusory claims of libel or defamation against any municipal defendant are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## Intentional Infliction of Emotional Distress

Belton generally asserts that all municipal defendants violated his rights by intentionally

inflicting him with emotional distress. Doc. #1 at 11(14). He does not include any specific allegations regarding his intentional infliction of emotional distress claim, except with regard to Wydra, Quinn, Mastropetre and Ryan. Thus, any claims of intentional infliction of emotional distress against Sullivan, Kicak, Crawford, Goclowski, Hall, Hallstrom, Mellon, Sheppard, Lupo, Baruto, Mansfield, Rivera-Rodriguez, DiaMico and Vere are conclusory and are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Belton alleges that the entry to his home by Wydra using a battering ram, the unlawful search of his residence by Quinn, Mastropetre and Ryan with their guns drawn and his wrongful incarceration caused him emotional and mental harm and loss of family relationships. *See* Compl. at 11-13, 15. In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Watts v. Chittenden*, 301 Conn. 575, 586 (2011). To be held liable for intentional infliction of emotional distress, one's conduct must be "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miller v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (citations omitted).

The court has concluded that Belton has stated plausible claims of unlawful search and seizure, excessive force and malicious prosecution. In view of the fact that the intentional

infliction of emotional distress claim arises from the same set of facts as the Fourth Amendment

search and seizure and excessive force claims, the court will exercise supplemental jurisdiction

over that claim. Accordingly, the claim of intentional infliction of emotional distress will

proceed against Wydra, Quinn, Mastropetre and Ryan in their individual and official capacities.

**ORDERS**

The court enters the following orders:

**(1)** All claims against Hamden Police Department, Hamden Police Department

SWAT Unit, Hamden Police Department Emergency Service Unit and Hamden Police

Department Street Interdiction Unit are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The

claim against the FBI is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

The official capacity claims for monetary damages against all other defendants for

violations of federal law are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (2). The

individual capacity claims: (1) under the Fourth Amendment against Quinn, Mastropetre and

Ryan and other defendants for use of excessive force by entering Belton's residence with their

guns drawn and/or by threatening Belton at gunpoint; (2) under the Fourth Amendment against

Ryan, Duback, Wydra and Lupo for use of excessive force in connection with warnings given

prior to the search that Belton should be considered armed and dangerous and that he had a prior

conviction for gun possession; (3) under the Fourth Amendment for false arrest, false

imprisonment and unlawful restraint against all defendants; (4) under the Fourth Amendment for

malicious prosecution against Wydra, Sullivan, Kicak, Crawford, Goclowski, Quinn, Hall,

Hallstrom, Mellon, Sheppard, Lupo, Baruto, Mansfield, Rivera-Rodriguez, DiAmico and Vere;

(5) under the Fifth and Sixth Amendments against all defendants; (6) under the Eighth

Amendment for excessive force against all defendants and excessive bond against Lupo; and (7) under the Fourteenth Amendment against all defendants for deprivations of due process and excessive force are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The individual capacity claims against all defendants for police misconduct, for unjustified criminal prosecution and for tampering with and fabricating evidence and the federal conspiracy claim against Wydra are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The state law claims against all defendants in their official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (2). The state law claims against all defendants in their individual capacities, including the claims for libel, defamation, violations of Conn. Gen. Stats. **§§** 54–33a and 54-33f and for violations of Article First, § 8 of the Connecticut Constitution are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The claim for intentional infliction of emotional distress against Duback, Sullivan, Kicak, Crawford, Goclowski, Hall, Hallstrom, Mellon, Sheppard, Lupo, Baruto, Mansfield, Rivera-Rodriguez, DiaMico and Vere in their individual capacities is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The Fourth Amendment search and seizure claim will proceed against all defendants in their individual capacities; the Fourth Amendment seizure and privacy claims related to the taking and dissemination of photographs of Belton and his residence will proceed against Vere in his individual capacity; the Fourth Amendment excessive force claim will proceed against Sheppard in his individual capacity; the federal conspiracy claim will proceed against Duback and Ryan in their individual capacities; the Fourth Amendment malicious prosecution claim will proceed against Duback, Ryan and Mastropetre in their individual capacities; the state law claim of intentional infliction of emotional distress will proceed against Wydra, Quinn, Mastropetre

and Ryan in their individual capacities; the claims of violations of Article First, §§ 7 and 9 of the Connecticut Constitution will proceed against Wydra, Quinn, Ryan, Mastropetre, Sullivan, Kicak, Crawford, Goclowski, Hall, Hallstrom, Mellon, Sheppard, Lupo, Baruto, Mansfield, Rivera-Rodriguez, DiaMico and Vere in their individual capacities.

(2)     **Within twenty-one (21) days of this Order**, the Clerk shall mail: a waiver of service of process request packet, including a copy of the complaint and its exhibits and this order to each of the following defendants in his individual capacity at the Hamden Police Department, 2900 Dixwell Avenue, Hamden, Connecticut 06518: Lieutenant Timothy Wydra, Sergeant John Sullivan, Deputy Chief Bo Kicak, Detective Jomo Crawford, Sergeant Eric Goclowski, Detective Raymond Quinn, Officer Kevin Hall, Officer Eric Hallstrom, Officer Michael Mellon, Officer Mark Sheppard, Lieutenant Gabriel Lupo, Officer Matthew Baruto, Officer Robert Mansfield, Officer Enrique Rivera-Rodriguez and Task Force Member and Officer Dennis Ryan ("the Hamden Police Defendants").  The Clerk shall mail: a waiver of service of process request packet, including a copy of the complaint and this order to each of the following defendants in his individual capacity at the West Haven Police Department, 200 Saw Mill Road, West Haven, Connecticut 06516; Task Force Officer Mark Vere and Task Force Officer Mark DiaMico.  The Clerk shall mail: a waiver of service of process request packet, including a copy of the complaint and this order to the following defendant in his individual capacity at the New Haven Police Department, 1 Union Avenue, New Haven, Connecticut 06519: Task Force Officer Michael Mastropetre.

**Belton is on notice that the Clerk cannot serve the complaint on defendant FBI Special Agent Anthony Duback in his individual capacity because Belton has not provided**

**a mailing address for defendant Duback. Pursuant to Rule 4(m), Fed. R. Civ. P., the court**

**will permit Belton ninety (90) days to provide an address where defendant Duback may be**

**served with a copy of the complaint and this order by mail. Failure to provide the address**

**within the time specified will result in the dismissal of the action as to defendant Duback.**

(3)     Defendants shall file their response to the complaint, either an answer or motion

to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of

summons forms are mailed to them. If the defendants choose to file an answer, they shall admit

or deny the allegations and respond to the cognizable claims recited above. They may also

include any and all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within six months (180 days) from the date of this order. Discovery requests need not

be filed with the court.

(5)     All motions for summary judgment shall be filed within seven months (210 days)

from the date of this order.

SO ORDERED at Bridgeport, Connecticut this 17th day of May, 2019.

_____/s/_____
Kari A. Dooley
United States District Judge