UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DARYL BELTON,                                  :
    *Plaintiff*,                             :
                                           :
v.                                             :   Case No. 3:17-cv-02006 (KAD)
                                           :
TIMOTHY WYDRA, ET AL.,                         :
    *Defendants*.                           :

## MEMORANDUM OF DECISION RE: DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 39, 42)

The plaintiff, Daryl Belton ("Belton"), commenced this civil rights action pursuant to 42 U.S.C. § 1983 against multiple defendants, all employees of either the Hamden Police Department, the New Haven Police Department, the West Haven Police Department, or the FBI.[1] The Complaint arises out of the search of Belton's residence on October 14, 2016, the seizure of property from his residence, his arrest, and subsequent prosecution. Upon initial review, *see* 28 U.S.C. § 1915A(b), the Court allowed the following claims to proceed: the Fourth Amendment search and seizure claim against all defendants in their individual capacities, the Fourth Amendment seizure and privacy claims related to the taking and dissemination of photographs against Officer Vere in his individual capacity, the Fourth Amendment excessive force claim

---

[1] Belton named the following employees of the Hamden Police Department: Deputy Chief Bo Kicak, Lieutenants Timothy Wydra and Gabriel Lupo, Sergeants John Sullivan and Eric Goclowski, Detectives Raymond Quinn and Jomo Crawford, and Officers Kevin Hall, Eric Hallstrom, Michael Mello, Mark Sheppard, Matthew Barbuto, Robert Manfield, Enrique Rivera-Rodriguez, and Officer/FBI Safe Streets Task Force Member Dennis Ryan; the following employees of the West Haven Police Department: Officer/FBI Safe Streets Task Force Members Mark Vere and Mark D'Amico; Officer/FBI Safe Streets Task Force Member Michael Mastropetre of the New Haven Police Department; and FBI Safe Streets Task Force Member and FBI Special Agent Anthony Duback ("SA Duback").

The Court notes that Task Force/Police Officer D'Amico's last name is incorrectly listed in the complaint as DiaMico and Police Officer Manfield's last name is incorrectly listed in the complaint as Mansfield. (*See* ECF Nos. 1 at 4, 6; 39-11; 44-2.) The Court directs the Clerk of Court to edit the docket to reflect the correct spelling of Defendant D'Amico's last name as D'Amico and the correct spelling of Defendant Manfield's last name as Manfield. In addition, the Clerk is requested to amend the docket to reflect the correct spelling of Officer Barbuto's name. (*See* ECF Nos. 1 at 4; 39-15.)

against Officer Sheppard in his individual capacity, the federal conspiracy claim asserted against Officer Ryan and SA Duback in their individual capacities, the Fourth Amendment malicious prosecution claim asserted against Officers Ryan and Mastropetre and SA Duback in their individual capacities, the state law claim of intentional infliction of emotional distress asserted against Lieutenant Wydra, Detective Quinn, and Officers Mastropetre and Ryan in their individual capacities, and the claims of violations of Article First, §§ 7 and 9 of the Connecticut Constitution asserted against all defendants in their individual capacities except SA Duback.  (*See* IRO, ECF No. 8.)

Defendants Wydra, Quinn, Ryan, Sullivan, Kicak, Crawford, Goclowski, Hall, Hallstrom, Mello, Sheppard, Lupo, Barbuto, Manfield, and Rivera-Rodriguez (the "Hamden Defendants") have filed a motion for summary judgment (ECF No. 39), and Defendants Vere and D'Amico (the "West Haven Defendants") have filed a separate motion for summary judgment (ECF No. 42).[2]

---

[2] While the Hamden Defendants also seek dismissal of all claims asserted against the Hamden Police Department, this Court previously dismissed Belton's claims against the Hamden Police Department, the Hamden Police Department SWAT Unit, the Hamden Police Department Emergency Service Unit, and the Hamden Police Department Street Interdiction Unit, in addition to the claims against the FBI, pursuant to 28 U.S.C. § 1915A(b)(1) and (2).  (*See* IRO at 33.)

In addition, defendants Mastropetre and SA Duback have not filed a dispositive motion or an appearance in this matter because it appears they were never properly served.  The waiver of service sent to Officer Mastropetre was returned unexecuted on June 21, 2019.  (*See* ECF No. 15.)  On June 25, 2019, Belton filed a notice with the Court titled "waiver of service" in which he provided addresses for waiver of service forms to be mailed to Officer Mastropetre and SA Duback.  (*See* ECF No. 16.)  However, by dint of an apparent oversight, neither a waiver of service nor a summons was served upon either defendant.  Although the Court is required to dismiss an action after notice to the plaintiff if a defendant is not served within the 90 days set forth in Fed. R. Civ. P. 4(m), the Rule also requires the Court to extend the timeframe for service "if the plaintiff shows good cause for the failure."  The Second Circuit has recognized that "District courts have a responsibility to assist *pro se* plaintiffs in their efforts to serve process on defendants," and that "[a]s long as the *pro se* prisoner provides the information necessary to identify the defendant, the Marshals' failure to effect service automatically constitutes 'good cause' for an extension of time within the meaning of Rule 4(m)."  *Murray v. Pataki*, 378 F. App'x 50, 52 (2d Cir. 2010) (summary order); *see also, e.g.*, *Fleming v. City of New York*, No. 10 CIV. 3345 (AT) (RLE), 2014 WL 6769618, at *7 (S.D.N.Y. Nov. 26, 2014) (granting extension for service of process despite passage of four years since the filing of original complaint where plaintiff provided "sufficient identifying information" for service upon the defendant but U.S. Marshals failed to effect service).

For the reasons set forth below, the Court grants both motions.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The question of which facts are material is determined by the substantive law.  *Id.*

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  Although the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmovant," the nonmoving party cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citations omitted).  To defeat a motion for summary judgment, the nonmoving party must present

---

Belton is no longer incarcerated. Therefore the Court directs Belton, if he wishes to pursue his claims against defendants Mastropetre and SA Duback, *see* footnote nine, *infra*, to arrange for service of the summonses and complaint upon Mastropetre and Duback by **May 3, 2021.  If Belton does not effect service by this date or move for an extension demonstrating good cause for the failure to serve by this date, all claims against Officer Mastropetre and SA Duback will be dismissed without prejudice.**

3

such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the Court is required to read a self-represented party's "papers liberally to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quotation marks and citation omitted), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts[3]**

Lieutenants Wydra and Lupo, Sergeants Sullivan and Goclowski, Detectives Quinn and Crawford, Deputy Chief Kicak, and Officers Hall, Hallstrom, Mello, Sheppard, Barbuto, Manfield,

---

[3] The material facts are taken from: (1) the Hamden Defendants' Local Rule 56(a)1 Statement ("Hamden Defs.' L.R. 56(a)1") (ECF No. 39-2), and accompanying Exhibits A through R (ECF. Nos. 39-4 to 39-19, 41-1, and 41-2); (2) the West Haven Defendants' Local Rule 56(a)1 Statement ("West Haven Defs.' L.R. 56(a)1") (ECF No. 44), and accompanying Exhibits A through C (ECF. Nos. 44-1 to 44-3); (3) Belton's Affidavit filed in opposition to the Hamden Defendants' motion for summary judgment (ECF No. 52 at 14-16); and (4) Exhibits A, B, 2, and 3 attached to the Complaint (ECF Nos. 1-1 to 1-4).

Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the paragraphs set forth in the moving party's Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party in each paragraph. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of additional disputed facts. (D. Conn. L. Civ. R. 56(a)2 and 56(a)3.)

The Hamden and West Haven Defendants informed Belton of these requirements. (*See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, ECF Nos. 40, 45.) Belton has filed a Local Rule 56(a)2 Statement that includes admissions and denials to the paragraphs in the Hamden Defendants' Local Rule 56(a)1 Statement. (ECF No. 54.) It does not, however, include citations to record evidence as required by Local Rule 56(a)1 and 3. Nor has Belton filed a list of additional disputed facts as required by Local Rules 56(a)2 and (3). Belton has filed no response of any kind to the West Haven Defendants' motion for summary judgment.

As Belton has not filed a proper Local Rule 56(a)2 Statement in response to the Hamden Defendants' Local Rule 56(a)1 Statement or any Local Rule 56(a)2 Statement in response to the West Haven Defendants' Local Rule 56(a)1 Statement, the facts included in both Local Rule 56(a)1 Statements are deemed admitted to the extent that they are supported by the record evidence. (*See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").)

Rivera-Rodriguez, and Ryan were employed by the Hamden Police Department at all times relevant to the allegations asserted in the complaint.  (Hamden Defs.' L.R. 56(a)1 ¶ 1.)  Officer Ryan was also a member of the FBI Safe Streets Task Force.  (*Id.* ¶ 4.)  Officers Vere and D'Amico were employed by the West Haven Police Department and also were members of the FBI Safe Streets Task Force at all relevant times.  (West Haven Defs.' L.R. 56(a)1 ¶¶ 1–2.)

On October 13, 2016, SA Duback and Officer Ryan submitted an application for a warrant to the Connecticut Superior Court to search the first floor of 28 Dix Street in Hamden, Connecticut for firearms, ammunition, firearm-related evidence, and narcotics.  (Hamden Defs.' L.R. 56(a)1 ¶ 3; Compl. Ex 3.)  In the warrant affidavit, Officer Ryan and SA Duback stated that they had received information from "reliable confidential informants" indicating that Belton had been involved in several recent gunpoint street robberies of drug dealers in Hamden.  (Hamden Defs.' L.R. 56(a) ¶ 5.)  The informants also indicated that they had observed Belton with a gun and narcotics.  (*Id.* ¶ 6.)  Based on the information received from the informants and other observations, SA Duback and Officer Ryan concluded that they had probable cause to believe that there was firearm-related evidence and narcotics in Belton's apartment on the first floor of 28 Dix Street, Hamden, Connecticut.  (*Id.* ¶ 7.)  Connecticut Superior Court Judge Anthony Avallone reviewed the search warrant application and affidavit and signed and issued the warrant based on his determination that probable cause existed for the search of the property.  (*Id.* ¶ 8.)

At approximately 5:00 a.m. on October 14, 2016, Officer Ryan and SA Duback briefed members of the FBI's Safe Street Task Force and the Hamden Police Department's Emergency Services Unit ("ESU"), led by Lieutenant Wydra, regarding the execution of the search warrant that had been issued by Judge Avallone.  (*Id.* ¶¶ 9-10; West Haven Defs.' L.R. 56(a)1 ¶¶ 9–10; *see*

*also* Wydra Case/Incident Report, Compl. Ex. A.)  A tactical plan was developed, and during the execution of the search warrant that morning, Lieutenant Wydra used a battering ram and Detective Quinn used a shield to gain entry to the first floor of 28 Dix Street.  (Hamden Defs.' L.R. 56(a)1 ¶ 13.)  The other members of the ESU entered the first floor equipped with assigned weapons and tools.  (*Id.* ¶ 14.)  Officer Vere was assigned photograph duty and took standard photographs of the scene and evidence.  (West Haven Defs.' L.R. 56(a)1 ¶ 13.)

Law enforcement officers observed Belton break a window and throw a firearm and heroin out of the window.  (Hamden Defs.' L.R. 56(a)1 ¶ 14.)  Officer Sheppard entered the first floor of 28 Dix Street with his gun unholstered and ordered Belton to the ground.  (*Id.* ¶ 15.)  Belton was handcuffed without the use of force and did not suffer any injuries during the handcuffing; he does not recall whether he was taken to the ground to be handcuffed.  (*Id.* ¶¶ 15–16.)  The officers at the scene ultimately collected and seized as evidence the .380 caliber firearm Belton threw from the window, a magazine from the .380 caliber firearm containing six rounds of ammunition, 35 wax folds of heroin, and thirteen 9 mm ammunition rounds which were found in a bedroom closet. (*Id.* ¶ 14; Ryan Case/Incident Report, Compl. Ex. 2.)

Officer Rivera-Rodriguez transported Belton to the Hamden Police Department; in doing so Belton does not allege that Rivera-Rodriguez used any improper force.  (Hamden Defs.' L.R. 56(a)1 ¶ 18.)  Upon arrival, officers processed Belton on charges of criminal possession of a firearm, ammunition, or an electronic defense weapon; criminal possession of a pistol or revolver; possession of narcotics; interfering with a search warrant; and the illegal manufacture, sale, distribution of narcotics in violation of Conn. Gen. Stat. §§  53a-217, 53a-217c, 21a-279(a), 54-33d, and 21a-278(b), respectively.  (*Id.*; *see also* Ryan Case/Incident Report.)  Belton was held at

the police department on a $100,000.00 bond and a court date was set for his arraignment. (Hamden Defs.' L.R. 56(a)1 ¶ 19.)

Lieutenant Wydra and Officer Ryan were the only officials to prepare Case/Incident Reports, which are attached as exhibits to Belton's complaint and which Belton acknowledges accurately reflect what occurred during the search on October 14, 2016. (*Id.* ¶¶ 12, 19; Compl., Exs. A, 2.) Deputy Chief Kicak, who was not present for the briefing and did not participate in the search or Belton's arrest, reviewed and signed Lieutenant Wydra's Case/Incident Report. (Hamden Defs.' L.R. 56(a)1 ¶ 20.)

At some point after Belton's arraignment, his attorney filed a motion to suppress the evidence seized during the search of the first floor of 28 Dix Street in Hamden. (*Id.* ¶ 21.) On August 3, 2017, Superior Court Judge Alander granted the motion to suppress on the ground that probable cause did not exist for the search. (*Id.* ¶¶ 22–23.) Specifically, Judge Alander determined that the affidavit in support of the search warrant application failed to include timeframes during which the observations were made by the confidential informants and also lacked sufficient information regarding the reliability of the informants. (*Id.* ¶ 23.) Judge Alander did not identify any misstatements of facts or omissions that were material to Judge Avallone's determination on October 13, 2016 that the information in the warrant application affidavit established probable cause for the search. (*Id.* ¶ 24.)

As a result of the ruling on the motion to suppress, the charges against Belton arising from his October 14, 2016 arrest were dismissed. ( *Id.* ¶ 25.) Belton remained incarcerated, however, due to an unrelated pending charge of violation of a protective order. (*Id.*)

## Discussion

Both the Hamden Defendants and the West Haven Defendants argue that probable cause and "arguable probable cause" existed for the search of the first floor of 28 Dix Street in Hamden and that Belton has therefore failed to raise a triable issue as to whether his Fourth Amendment rights were violated by the search.   They further argue that the undisputed facts demonstrate that their conduct during the search was not outrageous or egregious so as to state a claim for intentional infliction of emotional distress or to state private right of action under Article First §§ 7 and 9 of the Connecticut Constitution.   The Hamden Defendants additionally assert that: Deputy Chief Kicak is entitled to summary judgment on all claims brought against him due to Belton's failure to allege Kicak's personal involvement in any constitutional deprivation; Officer Ryan is entitled to judgment as a matter of law on the malicious prosecution claim; Officer Sheppard is entitled to judgment as a matter of law on the excessive force claim; and the conspiracy claim asserted against Officer Ryan fails because the underlying Fourth Amendment claim fails.   The West Haven Defendants also argue that Belton has failed to create a triable issue as to whether Officer Vere violated Belton's Fourth Amendment rights by taking photographs during the search of 28 Dix Street.   As noted above, in response to the Hamden Defendants' motion, Belton filed a memorandum, an affidavit, exhibits in support of the affidavit, and a Local Rule 56(a)2 Statement.[4]

---

[4] Included in Belton's memorandum in opposition to the Hamden Defendants' motion for summary judgment is paragraph titled "Arrest." In that paragraph, Belton cites to the Fourth Amendment's prohibition against unreasonable seizures of a person. (*See* ECF No. 52 at 11.) However, the Court previously reviewed Belton's Fourth Amendment false arrest and false imprisonment claims and dismissed those claims on the ground that the seizure of "the firearm, ammunition and drugs found during the search of Belton's residence," although those items were later suppressed, "constituted probable cause for Belton's arrest on charges of possession of narcotics, possession of a firearm and ammunition and distribution of narcotics." (*See* IRO at 13–14.) Thus, the Fourth Amendment false arrest and false imprisonment claims are no longer before the Court.

In their reply to Belton's opposition to their motion for summary judgment, the Hamden Defendants contend that Belton did not respond or file an opposition to their arguments addressed to the excessive force, intentional infliction

He did not however file any response to the West Haven defendants' motion for summary judgment.

### Claims Against Deputy Chief Kicak

Only the Fourth Amendment search and seizure claim and the state law claims asserted under the Connecticut Constitution were permitted to proceed against Deputy Chief Kicak.  Belton offers no opposition to the Hamden Defendants' contention that Belton has not alleged the personal involvement of Deputy Chief Kicak in the alleged unreasonable search of 28 Dix Street on October 14, 2016 and that Kicak is therefore entitled to the entry of summary judgment on these claims.

A plaintiff seeking to recover money damages under section 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). A government or prison official is not personally involved in a constitutional violation simply because he or she was the supervisor of other defendants who may have violated the plaintiff's constitutional rights.  *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) ("[L]iability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant").  To the contrary, the Second Circuit has held that "after *Iqbal*, there is no special rule for supervisory liability," and instead, "[t]he violation must be established against the supervisory official directly."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Therefore, in order to

---

of emotional distress ("IIED"), or state constitutional claims and suggest that those claims have been abandoned.  (*See* Reply at 8, ECF No. 53.)  In *Jackson v. Federal Express*, 766 F.3d 189 (2d Cir. 2014), the Second Circuit instructed that if a *pro se* party files only "a partial response to a motion . . . *i.e.*, referencing some claims or defenses but not others . . . the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate."  *Id.* at 197–98.  Thus, the Court does not consider the excessive force, IIED, or state law claims to have been abandoned and will determine whether the Hamden Defendants are entitled to summary judgment on those claims.

demonstrate personal involvement under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, he or she "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo*, 770 F.3d at 116.

Deputy Chief Kicak avers that although he was on duty on October 14, 2016, he was not present during and did not participate in the execution of the warrant to search the first floor of 28 Dix Street. (Kicak Aff. ¶¶ 3, 5, ECF No. 39-9.) On October 18, 2016, in his supervisory capacity as Deputy Chief, Kicak reviewed and signed off on the Case/Incident Report prepared by Lieutenant Wydra in connection with the October 14, 2016 execution of the search. (*Id.* ¶ 4; Compl. Ex. A.) The complaint includes no allegations against Deputy Chief Kicak and Belton has submitted no evidence to contradict Deputy Chief Kicak's sworn statement that he was not directly involved in the search. Deputy Chief Kicak is entitled to the entry of judgment in his favor on the Fourth Amendment search and seizure claim and on the state constitutional claims and the motion for summary judgment is granted as to Defendant Kicak.

### Fourth Amendment Unlawful Search and Seizure Claims

#### *Reasonableness of Officer Ryan's Probable Cause Determination*

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The protections of the Fourth Amendment are made applicable to the states by the Fourteenth Amendment. "For a seizure [or search] to be reasonable, it must generally be supported by

probable cause." *Mara v. Rilling*, 921 F.3d 48, 69 (2d Cir. 2019).  Under both federal law and Connecticut law, "probable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983), and citing *State v. Vincent*, 229 Conn. 164, 171, 640 A.2d 94 (1994), for the proposition that a "valid search requires 'probable cause to believe that the particular items to be seized are connected with criminal activity or will assist in a particular apprehension or conviction' and "that the items sought to be seized will be found in the place to be searched").  If a search has been conducted pursuant to a court-authorized warrant, "great deference" is due to the issuing judge's determination that there is probable cause to search a premises.  *United States v. Leon*, 468 U.S. 897, 914 (1984).  Thus, "the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause."  *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *see also Walczyk*, 496 F.3d at 155–56 ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause.")

To overcome the presumptive reasonableness attached to a search executed pursuant to a judicial warrant, a plaintiff must show that the "defendant (1) 'knowingly and deliberately, or with a reckless disregard of the truth,' procured the warrant, (2) based on 'false statements or material omissions,' that (3) 'were necessary to the finding of probable cause.'" *Ganek v. Leibowitz*, 874 F.3d 73, 81 (2d Cir. 2017) (quoting *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)). "Recklessness may be inferred where the omitted information was 'clearly critical' to the probable

11

cause determination." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991) (citations omitted). In addition, a plaintiff may overcome the presumption that a search executed pursuant to a warrant issued by a judge was objectively reasonable by showing that the search warrant affidavit on its face was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986) (citing *Leon*, 468 U.S. at 923).

The Hamden and West Haven Defendants argue that it was reasonable for Officer Ryan to believe that probable cause existed to search 28 Dix Street based on the search warrant issued by Judge Avallone and that Belton has not presented evidence to overcome this presumption. In opposition to this argument, Belton re-states, almost word for word, Judge Alander's ruling granting the motion to suppress the evidence seized during the October 14, 2016 search. Belton asserts that SA Duback and Officer Ryan recklessly prepared the affidavit in support of the warrant to search 28 Dix Street. He does not, however, identify any false or inaccurate information that Duback and Ryan allegedly included in the application. Nor does he describe any exculpatory information that was allegedly omitted from the search warrant affidavit. Conclusory allegations in this regard are not sufficient to overcome the presumption that Officer Ryan reasonably believed that the search executed pursuant to a warrant issued by a judge was based on probable cause. *See, e.g.*, *Parker v. Zugibe*, No. 16-CV-4265 (KMK), 2017 WL 4296795, at *5 (S.D.N.Y. Sept. 26, 2017) ("Plaintiff's bald assertion that the warrant contained false statements does not plausibly state a claim that Officer Fantasia knowingly and intentionally, or with reckless disregard for the truth, made a false statement.") (internal quotation marks and citation omitted); *Calderon v. City of New York*, 138 F. Supp. 3d 593, 604 (S.D.N.Y. 2015) ("Unsupported conclusory allegations of falsehood or material omission cannot support a challenge to the validity of [a] warrant; rather, the

plaintiff must make specific allegations supported by an offer of proof.") (internal quotation marks omitted).

Drawing all reasonable inferences in Belton's favor, the Court concludes that no reasonable trier of fact could find that the statements set forth in the affidavit constituted knowing, intentional, or reckless falsification of facts or that Ryan omitted facts or information that were material to the determination of probable cause, as required to overcome the presumption that Officer Ryan reasonably believed the search, authorized by a warrant, was based upon probable cause.  Nor would the evidence permit the factfinder to conclude that the allegations in the arrest warrant affidavit were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Leon*, 468 U.S. at 923 (quotation marks and citation omitted).  Because Officer Ryan has demonstrated that it was objectively reasonable for him to believe that probable cause existed for the search of 28 Dix Street pursuant to the warrant issued by Judge Avallone, Officer Ryan is entitled to summary judgment on the Fourth Amendment unlawful search and seizure claim.[5]

### *Collective Knowledge Doctrine*

Defendants  Wydra,  Quinn,  Sullivan,  Crawford,  Goclowski,  Hall,  Hallstrom,  Mello,

---

[5]  In responding to the Hamden Defendants' argument addressed to his search and seizure claim, Belton offers a new Fourth Amendment claim regarding the lawfulness of the search.  He contends that on the date of the search, there were two apartments on the first floor of 28 Dix Street, he did not reside in either apartment, the search warrant covered only one apartment, and the law enforcement officers exceeded the scope of the search warrant by entering both apartments.  None of these allegations were asserted in the complaint.  Belton clearly referred to the first floor of 28 Dix Street as his residence and did not mention the existence of two apartments.  (*See* ECF No. 1 at 9–10 ¶¶ 2–3, 6–7.)  Nor did the warrant refer to a specific apartment on the first floor of 28 Dix Street.  Because Belton may not amend the complaint in a memorandum in opposition to a motion for summary judgment, the Court does not consider these new allegations.  *See Lyman v. CSX Transportation Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (summary order) (affirming district court's determination that it should not consider claims raised for the first time in opposition to summary judgment) (citations omitted); *Auguste v. Dep't of Corrections*, 424 F. Supp. 2d 363, 368 (D. Conn. 2006) (generally, a plaintiff "cannot amend his complaint in his memorandum in response to defendants' motion for summary judgment").

Sheppard, Lupo, Barbuto, Manfield, Rivera-Rodriguez, Vere, and D'Amico aver that during the early morning briefing on October 14, 2016, Officer Ryan informed them of the valid search warrant that had been issued by the Connecticut Superior Court for the first floor of 28 Dix Street in Hamden. Thus, they argue, the evidence establishes that information about the existence of the search warrant was communicated by Officer Ryan to the other law enforcement officers who would be participating in the search—therefore allowing the inference to be drawn that the defendants' probable cause determination was based upon their collective knowledge.

"Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001). Thus, this doctrine allows a court to impute an officer's knowledge to another officer who actually makes a stop or conducts a search, even if the latter does not possess all the relevant facts. *See id.* Two assumptions underlie this doctrine: (1) an arresting officer or an officer executing a search can reasonably assume that the officer or department requesting a particular search, investigation, or arrest has a factual basis to justify it, *see Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971) ("Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause."); and (2) that "at some point along the line, some law enforcement official–or perhaps some agglomeration of such officials–involved must possess sufficient information to permit the conclusion that a search or arrest is

14

justified." *Colon*, 250 F.3d at 136.  *See also, e.g.*, *United States v. Cruz*, 834 F.2d 47, 51 (2d Cir.

1987) ("The determination of whether probable cause to arrest exists can be based on the collective

knowledge of all of the officers involved in the surveillance efforts because the various law

enforcement officers in this investigation were in communication with each other."); *Toliver v.

City of New York*, No. 10–CV–3165, 2012 WL 7782720, at *6 (S.D.N.Y. Dec. 10, 2012) ("The

[collective knowledge] doctrine applies if the officers involved are in communication with each

other."), *report and recommendation adopted*,  2013 WL 1155293 (S.D.N.Y. Mar. 21, 2013).

   In addition, in order to be insulated from liability by the collective knowledge doctrine, the

officer executing a search warrant must have acted reasonably in relying on the information

communicated to him.  Belton has not identified any evidence nor offered any response to the

defendants' assertion that they reasonably relied upon the information conveyed by SA Duback

and Officer Ryan regarding the issuance of the search warrant, and the caselaw is clear that an

officer need not have been personally aware of the underlying facts that provided the basis for the

probable cause determination in order to have acted reasonably.  *See, e.g.*, *Colon v. City of New

York*, No. 11-CV-0173 (MKB), 2014 WL 1338730, at *6 (E.D.N.Y. Apr. 2, 2014) ("An arresting

officer need not have knowledge of the underlying facts establishing probable cause to make an

independent determination of whether probable cause exists—it is enough that the arresting officer

be told that there is probable cause for arrest.") (collecting cases); *Golphin v. City of New York*,

No. 09 CIV. 1015 (BSJ), 2011 WL 4375679, at *3 (S.D.N.Y. Sept. 19, 2011) ("The only concern

of the Court in this lawsuit is whether Collado's actions were reasonable-not whether the actions

of his superior officers were reasonable or even whether probable cause was properly

established").  Accordingly, the motion for summary judgment is granted on the Fourth

Amendment search and seizure claim as to Defendants Wydra, Quinn, Sullivan, Crawford, Goclowski, Hall, Hallstrom, Mello, Sheppard, Lupo, Barbuto, Manfield, Rivera-Rodriguez, Vere, and D'Amico.

**Fourth Amendment Excessive Force Claim Against Officer Sheppard**

Belton alleges in the complaint that Officer Sheppard had "forcefully" taken him "down to the ground at gunpoint under threat . . . to shoot him." (ECF No. 1 at 10.) Officer Sheppard concedes that his gun was unholstered when he encountered Belton on the first floor of 28 Dix Street and that he ordered him to get on the ground and applied handcuffs to his wrists but argues that this use of force was reasonable under the circumstances known to him at the time. Belton does not address this claim or argument in his memorandum in response to the motion for summary judgment.

The Fourth Amendment protects individuals from arrests executed by law enforcement officers with excessive force. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Whether the force used was excessive is analyzed under the Fourth Amendment's "reasonableness" standard and is determined by "balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 395–96 (quotation marks and citations omitted). This inquiry requires a court to pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

16

Law enforcement officers executing a search warrant are privileged to detain individuals, even to the point of handcuffing them, while the search is carried out.  *See Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.") (internal quotation marks and citation omitted).  "The governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons . . . ." *Id.* at 100.  Furthermore, the execution of a warrant to search for drugs "may give rise to sudden violence or frantic efforts to conceal or destroy evidence." *Michigan v. Summers*, 452 U.S. 692, 702 (1981).

"The vast majority of cases within the Second Circuit hold that merely drawing weapons when effectuating an arrest does not constitute excessive force as a matter of law." *Podlach v. Vill. of Southampton*, No. 14 Civ. 6954 (SJF) (SIL), 2017 WL 4350433, at *3 (E.D.N.Y. May 11, 2017), *report and recommendation adopted*, 2017 WL 4350434 (E.D.N.Y. June 6, 2017), *aff'd*, 767 F. App'x 200 (2d Cir. 2019) (quotation marks and citations omitted); *Mittelman v. Cnty. of Rockland*, No. 07 Civ. 6382, 2013 WL 1248623, at *13 (S.D.N.Y. Mar. 26, 2013) (finding "insufficient . . . Plaintiff's assertion that the officers pointed guns at him . . . [because a] threat of force does not constitute excessive force").

Sheppard avers that he participated in the early-morning briefing on October 14, 2016, during which he learned about the warrant to search 28 Dix Street.  (Sheppard Aff. ¶ 4, ECF No. 39-7.)  Officer Ryan informed the law enforcement officers present that he and members of the FBI Safe Streets Task Force required their assistance in executing the warrant due to "the inherently dangerous nature of the search for illegal firearms."  (Ryan Aff. ¶ 9, ECF No. 39-6.)

Given the context and purpose of the search, it was reasonable for Sheppard to have unholstered his weapon when he encountered Belton. *See, e.g.*, *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) ("[T]he officers' decision to draw their weapons while searching the Residence for guns, drugs and a drug dealer was objectively reasonable."); *Rincon v. City of New York*, No. 03 Civ. 8276 (LAP), 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) ("Although the officers drew their weapons on the Plaintiff, this action is not unusual in light of the circumstances surrounding the search. The warrant stated . . . the possibility of weapons in the apartment, making it reasonable for the officers to draw their weapons for safety purposes.").

Sheppard further avers that he ordered Belton to get on the ground and that after Belton complied with his order, he placed Belton in handcuffs. (Sheppard Aff. ¶ 8.) At that point, another officer escorted Belton outside and placed him in a Hamden Police vehicle and Officer Rivera-Rodriguez drove Belton to the Hamden Police Station. (*Id.* ¶ 13; *see also* Ryan Case/Incident Report.) Officer Sheppard "did not kick, punch, strike, or otherwise hit [Belton] in the course of taking him into custody, which [Sheppard] was able to do without incident." (Sheppard Aff. ¶ 9.) Although Belton filed an affidavit in opposition to the motion for summary judgment, he includes no statements related to the force allegedly used by Officer Sheppard during the search. At his deposition, Belton testified that Officer Sheppard found him in a bedroom on the first floor and yelled at him. However, "[m]ere threats or verbal harassment, without any 'appreciable injury,' generally are not actionable under section 1983." *Merrill v. Schell*, 279 F. Supp. 3d 438, 443 (W.D.N.Y. 2017) (quoting *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)). Belton did not otherwise testify that Officer Sheppard threatened to kill or harm him. (*See* Ex. A, Dep. Tr., Dec. 3, 2019, ECF No. 39-4, at 32, 35, 67.) Belton could not clearly recall how or when he was

handcuffed or whether he was taken to the ground by Officer Sheppard; he also represented that neither Officer Sheppard nor any officer caused him any kind of harm requiring medical treatment.[6] (*Id.* at 38–39.) Belton further conceded that he had no independent recollection of the use of force by Officer Sheppard and that he relied entirely on the statements set forth in the Case/Incident Report prepared by Officer Ryan as support for his claim that Officer Sheppard had used excessive force in taking him to the ground at gunpoint. (*Id.* at 76.) Thus, Belton has offered no evidence to contradict Officer Sheppard's statements regarding the degree of force that he used when taking Belton into custody.

The Court therefore concludes that there is no genuine dispute of a material fact that the force used by Sheppard in drawing his gun, ordering Belton to the ground, and placing him in handcuffs was reasonable in view of the facts known to Officer Sheppard at the time that he encountered Belton during the search. *See, e.g.*, *Pina v. City of Hartford*, No. 07-CV-0657 (JCH), 2009 WL 1231986, at *8 (D. Conn. Apr. 29, 2009) (concluding that "the fact that the officers had their guns drawn and pointed at the plaintiffs [was] not unreasonable during the execution of a search warrant" and the use of profanities and threat to shoot plaintiffs if they moved constituted a threat of force that was not unreasonable and did not rise to the level of excessive force). The motion for summary judgment is granted as to the Fourth Amendment excessive force claim against Officer Sheppard.

**Fourth Amendment Malicious Prosecution Claims**

The Second Circuit has held that a malicious prosecution claim brought by a plaintiff pursuant to section 1983 "to vindicate" his or her Fourth Amendment "right to be free from

---

[6] Belton did testify that he sustained a cut on his hand during the execution of the search warrant but he acknowledged that he did not know how the cut occurred. (*See id.* at 15.)

unreasonable seizures, [is] substantially the same the same as [a] claim[] for . . . malicious prosecution   under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (internal quotation marks and citations omitted).   To state a claim for malicious prosecution under Connecticut law, a plaintiff must prove four elements: "'(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.'" *Spak v. Phillips*, 857 F.3d 458, 461 n.1 (2d Cir. 2017) (quoting *Brooks v. Sweeney*, 299 Conn. 196, 210–11, 9 A.3d 347 (2010)).   "Probable cause has been defined as the knowledge of facts sufficient to justify a reasonable person in the belief that he has reasonable grounds for prosecuting an action." *Brooks*, 299 Conn. at 211 (quotation marks and citation omitted). "Malice may be inferred from lack of probable cause." *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94, 912 A.2d 1019 (2007).

In addition, "the deprivation of liberty—the seizure—must have been effected 'pursuant to legal process.'" *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116–17 (2d Cir. 1995) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)).   A deprivation of liberty pursuant to legal process occurs either after arraignment on criminal charges or as a result of an arrest made pursuant to a warrant. *Id.* at 117.   Consequently, a deprivation of liberty occurring from a warrantless arrest is not a deprivation pre-arraignment, and instead implicates the separate tort of false arrest. *See id.*; *see also Wallace v. Kato*, 549 U.S. 384, 390 (2007) ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the

wrongful use of judicial process rather than detention itself.") (internal quotation marks and citations omitted).

Belton describes his malicious prosecution claim as follows: Officers Ryan and Mastropetre and SA Duback initiated a prosecution against him by unlawfully searching his residence without probable cause, arresting him for possession of a gun, ammunition, and narcotics, and leaving him in prison for almost a year until a judge granted a motion to suppress the evidence seized during the search. Belton's warrantless arrest occurred on October 14, 2016 and was based on the evidence seized during the search of 28 Dix Street. Thus, any malicious prosecution claim did not arise until Belton's arraignment on the criminal charges for which he was arrested. *See id.*; *Singer*, 63 F.3d at 117.

Officer Ryan does not contest that the first two elements of a malicious prosecution claim– initiation or procurement of the prosecution and favorable termination, have been met. As to the element of probable cause, Officer Ryan argues that he was justified in believing that reasonable grounds existed to prosecute Belton on charges of possession of narcotics and possession of a firearm based on the heroin and handgun seized during the execution of the search warrant. He relies on *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), in which the Second Circuit held that the fruit of the poisonous tree "doctrine is inapplicable to civil § 1983 actions." *Id.* at 145. In *Townes*, the court held that a plaintiff in a civil action could not "elongate the chain of causation" between an unreasonable search and seizure and his subsequent conviction and incarceration notwithstanding the fact that the evidence used to convict him was later excluded as fruit of the poisonous tree in the prior criminal proceeding. *Id.* at 145–46. The Court of Appeals further held that the plaintiff could not rely on the exclusionary rule to recover damages for his

21

conviction and incarceration, explaining that the purpose of the exclusionary rule in criminal cases is to deter future police misconduct, whereas "[t]he basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." *Id.* at 147 (internal quotation marks and citations omitted). Thus, the court concluded that "[n]o Fourth Amendment value would be served if [plaintiff], who illegally possessed firearms and narcotics, reaps the financial benefit he seeks. [Plaintiff] has already reaped an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom, achieved by the suppression of evidence obtained in violation of the Fourth Amendment." *Id.* at 148. (footnote and citations omitted).

Officer Ryan contends that under *Townes*, probable cause existed to arrest and thereafter prosecute Belton on charges of possession of a weapon and possession of narcotics based upon the evidence seized at the time of the search and that the subsequent suppression of the evidence does not alter the probable cause determination for purposes of this civil rights action. As this Court previously observed in its Initial Review Order, district courts in New York are divided on whether the fruit of the poisonous tree doctrine applies to malicious prosecution cases in light of the Second Circuit's decision in *Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003), a case decided four years after *Townes*. (*See* IRO at 16-17.) In *Boyd*, the Second Circuit acknowledged that the element of probable cause in a malicious prosecution claim asserted under New York law had been defined by the New York courts in two different ways[7] but that the relevant question for purposes of the case before it was "whether there was probable cause to believe the prosecution of Boyd

---

[7] New York courts define probable cause in the malicious prosecution context as "facts and circumstances" that would cause "a reasonably prudent person to believe" either that "the plaintiff [was] guilty" or that the prosecution "could succeed." *Id.* at 76.

could succeed." *Id.* at 76 n.7.  The court observed that disputed facts existed as to whether an inculpatory statement was made by the plaintiff before his arrest or after his arrest and prior to his having been issued his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966).  *Id.* at 77.  The court concluded that if the inculpatory statement was made after the plaintiff's arrest, but prior to *Miranda* warnings, it "would clearly not be admissible" and "there would be no probable cause to believe the prosecution could succeed."  *Id.*  In reaching this conclusion, the Second Circuit did not mention *Townes* or the exclusionary rule.

In Connecticut, the probable cause element of a malicious prosecution claim is defined as "the knowledge of facts sufficient to justify a reasonable person in the belief that he has reasonable grounds for prosecuting an action."  *Brooks*, 299 Conn. at 211 (quotation marks and citation omitted).  It is not clear that this definition of probable cause is the equivalent of the definition of probable cause at issue in *Boyd.*  And because *Boyd* involved the application of New York law, it is not binding on this Court.  Furthermore, in *Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017), the Second Circuit cabined *Boyd* to its facts, explaining that "*Boyd* did not hold that inadmissible evidence cannot be used in evaluating probable cause for a prosecution, but only that where the sole evidence of a defendant's guilt is a single statement that police would have understood at the time could not be used in a criminal case (a circumstance largely limited to the facts of *Boyd* itself) such evidence is not alone sufficient to defeat a malicious prosecution claim."  *Id*. at 570.   The Second Circuit further observed that the district court's application of *Boyd* to exclude all evidence that the state trial judge had deemed inadmissible during the criminal trial "places too high of a burden on defendants in malicious prosecution cases, as it prohibits them from relying on evidence that only retrospectively was deemed inadmissible, even if, at the time the prosecution was

brought, the defendants reasonably believed the evidence would ultimately be ruled admissible." *Id.* at 570 n.19.

The Court therefore concludes that *Boyd's* limited holding does not foreclose Officer Ryan from relying upon the seized gun and narcotics as establishing that he had "knowledge of facts sufficient to justify a reasonable person in the belief that he has reasonable grounds for prosecuting an action." *Brooks*, 299 Conn. at 211. *See also Cyrus v. City of New York*, 450 F. App'x 24, 26–27 (2d Cir. 2011) (summary order) (affirming district court's conclusion that "[e]ven assuming that plaintiff's arrest was unlawful . . . the exclusionary rule does not apply to § 1983 claims and therefore the gun would be admissible to determine probable cause in the civil action" alleging malicious prosecution) (citing, *inter alia*, *Townes*, 176 F.3d at 148); *Hatcher v. City of New York*, No. 15-CV-7500 (VSB), 2018 WL 1583036, at *6 (S.D.N.Y. Mar. 27, 2018) (holding that *Boyd* was inapplicable to probable cause determination for malicious prosecution claim that involved evidence allegedly seized pursuant to unlawful search that the plaintiff claimed would have been inadmissible to prove guilt of the crime). Here, the evidence supporting Belton's prosecution was seized by the defendants during the execution of the search warrant. And it is Belton's burden to demonstrate that Officer Ryan lacked probable cause to believe that there were reasonable grounds to initiate or procure his prosecution. *See Bhatia v. Debek*, 287 Conn. 397, 410–11, 948 A.2d 1009 (2008) ("Although want of probable cause is negative in character, the burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise, that the defendant had no reasonable ground for instituting the criminal proceeding.") (quotation marks and citation omitted); *accord Coleman v. City of New York*, 688 F. App'x 56, 58 (2d Cir. 2017) (summary order) ("It is Coleman's burden to show a post-arraignment deprivation of liberty that resulted from the prosecution that he alleges

was unsupported by probable cause; he has not sustained it").  Belton does not address Officer Ryan's arguments and has not offered any evidence to dispute the existence of probable cause for his arrest and the initiation of his prosecution based on the seizure of the gun, ammunition, and narcotics during the execution of the search warrant.  Therefore, Belton has failed to create a triable issue as to whether Officer Ryan lacked probable cause to initiate and/or maintain Belton's prosecution.

"Once probable cause to arrest has  been  established, claims of malicious  prosecution survive only if, between the arrest and the initiation of the prosecution, the groundless nature of the charges is made apparent by the discovery of some intervening fact." *Fernandez-Bravo v. Town of Manchester*, No. 3:12-CV-01103-WWE, 2016 WL 7238791, at *3 (D. Conn. Dec. 14, 2016), *aff'd*, 711 F. App'x 5 (2d Cir. 2017) (internal quotation marks and citation omitted).  Belton does not allege or identify any evidence indicating that Officer Ryan became aware of any facts between the time of Belton's arrest pursuant to the evidence seized during the search and his arraignment that made it apparent that the criminal charges were groundless.

Accordingly, the motion for summary judgment is granted as to the malicious prosecution claim asserted against Officer Ryan.

**Fourth Amendment Privacy Claim**

Belton alleges that during the search, Officer Vere took photographs of him and of the first floor of 28 Dix Street and disseminated the photographs to the press.  Officer Vere argues that Belton has failed to create a triable issue as to whether he violated Belton's Fourth Amendment privacy rights because the photographs were taken pursuant to a standard police procedure and furthered a governmental interest.  Belton offers no response to this argument.

25

The Supreme Court has "expressly held that the Fourth Amendment governs not only the seizure of tangible items," but also extends to the seizure of intangibles. *Katz v. United States*, 389 U.S. 347, 353 (1967). In *Caldarola v. County of Westchester*, 343 F.3d 570 (2d Cir. 2003), the Second Circuit concluded that capturing a person's image through a recording device constituted a seizure under the Fourth Amendment. *Id.* at 574–75. In *Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000), the Second Circuit observed that the taking of police photographs of an arrestee may be reasonable under the Fourth Amendment if "sufficiently closely related to a legitimate government objective." *Id.* at 212 (citation omitted). In determining the constitutionality of a seizure under the Fourth Amendment, the court "must balance the nature and quality of the intrusion on the individual's [privacy] interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks and citations omitted).

Officer Vere attests that he was present during the briefing on October 14, 2016 at the Hamden Police Department, where he learned about the search warrant to be executed later that morning. (Vere Aff. ¶ 7, ECF No. 44-1.) He avers that a member of the FBI Safe Streets Task Force provided him with a digital camera and asked him to take photographs at the scene. (*Id.* ¶¶ 8–9.) Officer Vere states that he took "entry photographs" of the interior of the residence, as well as "exit photographs" following the officers' departure from the scene. (*Id.* ¶ 10.) He also photographed the evidence seized during the search. (*Id.*) Officer Vere does not aver that he took photographs of Belton.

Officer Vere contends that the taking of entry, exit, and evidence photographs is part of standard police procedure in documenting a crime scene or the execution of a search warrant, and

26

that the purpose of taking these types of photographs includes protecting both the State and Belton, who resided on the first floor, from any property damage disputes that might arise after the search. The Court concludes that Officer Vere has offered a legitimate governmental purpose for taking photographs of the first floor of 28 Dix Street during the search as well as of the evidence seized during the search. *See Warren v. Williams*, No. CIV.A. 304CV537 (JCH), 2006 WL 860998, at *20 (D. Conn. Mar. 31, 2006) ("It is reasonable, and the plaintiffs concede, that the police have the ability to document their search of a particular premises as it occurs so as to create a record of its actions and to protect against claims of property damage.")

Officer Vere avers that as soon as he finished taking photographs, he returned the camera to a Task Force member.  (Vere Aff. ¶ 11.)  He attests that he did not download, share, or keep copies of any of the photographs and did not enter any photographs in evidence.  (*Id.* ¶¶ 12-15.) Nor did he disseminate any photographs to the press.  (*Id.* ¶ 16.)  As noted previously, Belton has not submitted any evidence to contradict the sworn statements of Officer Vere.

Given the undisputed facts regarding the governmental interest in documenting the interior of 28 Dix Street both before and after the search as well as in detailing the evidence seized during the search, the limited intrusion the photographs inflicted on Belton's privacy, and the lack of evidence that any photographs taken by Officer Vere were disseminated to the press or the public, Officer Vere is entitled to summary judgment on the Fourth Amendment privacy claims asserted against him.

**Federal Conspiracy Claim**

In reviewing the allegations asserted in the complaint, this Court previously concluded that Belton had plausibly stated a section 1983 conspiracy claim based upon his allegations that Officer

Ryan and SA Duback conspired to violate his constitutional rights by including unreliable information that had been provided to them by confidential informants in the affidavit filed in support of the application for a warrant to search his residence.[8]   However, a section 1983 conspiracy claim fails as a matter of law if there is no underlying constitutional violation. *See Singer*, 63 F.3d at 119.  Because the Court has already determined that the evidence concerning the search of 28 Dix Street and the seizure of narcotics and a firearm pursuant to that search would not permit a reasonable factfinder to conclude that Belton had suffered a violation of his constitutional rights, any claim that Officer Ryan conspired with SA Duback to violate Belton's Fourth Amendment rights necessarily fails.  *See, e.g.*, *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Since plaintiff cannot establish a claim for false arrest or the use of excessive force, he may not maintain a § 1983 cause of action for conspiracy.") (citing *Singer*, 63 F.3d at 119); *Tirse v. Gilbo*, 6:15-CV-0987, 2016 WL 4046780, *18 (N.D.N.Y. July 27, 2016) ("Here, Plaintiff's § 1983 conspiracy claim is dismissed because his underlying constitutional claims for false arrest, malicious prosecution, abuse of process, and malicious abuse of power have been dismissed."); *Beckles v. City of New York*, No. 08 CIV. 03687 (RJH), 2011 WL 722770, at *6 (S.D.N.Y. Feb. 25, 2011) ("The Court here has determined that Beckles cannot maintain her Section 1983 claim; in other words, Beckles has suffered no constitutional violation. Therefore, Beckles' conspiracy claim must be dismissed."), *aff'd*, 492 F. App'x 181 (2d Cir. 2012).   The motion for summary judgment is granted as to the section 1983 conspiracy claim

---

[8] To prevail on a conspiracy claim under § 1983, the "plaintiff must show (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (*per curiam*) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

asserted against Officer Ryan.

**Intentional Infliction of Emotional Distress**

In Connecticut, to prevail upon a claim of intentional infliction of emotional distress, a plaintiff must establish: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059 (2000) (quotation marks and citation omitted). "The standard in Connecticut to demonstrate extreme and outrageous conduct is stringent." *Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998). Extreme and outrageous conduct is defined as conduct that "exceeds all bounds usually tolerated by decent society." *Crocco v. Advance Stores Co. Inc.*, 421 F. Supp. 2d 485, 503 (D. Conn. 2006) (quoting *Carrol v. Allstate Insurance Co.*, 262 Conn. 433, 443, 815 A.2d 119 (2003)). It is conduct that is "regarded as atrocious, and utterly intolerable in a civilized community. . . . [where] recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Appleton*, 254 Conn. at 11 (internal quotation marks and citation omitted). Whether "conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000). Only where reasonable minds might disagree does it become an issue for the jury. *Stack v. Perez*, 248 F. Supp. 2d 106, 110 (D. Conn. 2003).

This claim appears to be premised upon: (1) Lieutenant Wydra's conduct in breaking down

the doors at 28 Dix Street with a battering ram; (2) Officer Ryan's conduct in pointing a gun at Belton's face during the search; and (3) Detective Quinn's conduct in screaming at and threatening Belton, using a shield to enter the premises, and drawing his gun.  (Compl. at 13, 15, 18.)  Belton claims that this conduct caused him to suffer mental and emotional harm, flashbacks of guns being pointed at his face, and sleepless nights.  (*Id.* at 7, 11.)  Wydra, Quinn, and Ryan argue that they did not come into physical contact with Belton during the search and that they acted reasonably in executing the search warrant.  Belton does not address this argument.

Belton has asserted no evidence from which a factfinder could infer that he actually suffered "extreme emotional distress" after the alleged unlawful search of the first-floor residence located at 28 Dix Street.  *See, e.g.*, *Squeo v. Norwalk Hosp. Ass'n*, 316 Conn. 558, 600, 113 A.3d 932 (2015) (The emotional distress must be "so severe that no reasonable person could have been expected to endure it.").  Nor has Belton presented sufficient evidence for a fact finder to conclude that the actions of Lieutenant Wydra, Officer Ryan, or Detective Quinn were "extreme and outrageous," as those terms are defined at common law.  *See, e.g.*, *Williams v. Campana*, No. 08-CV-4696 (CS), 2010 WL 11712643, at \*9–10 (S.D.N.Y. Aug. 19, 2010) ("Forcibly entering a search location  with guns drawn and  detaining the occupants" with no alleged damage to apartment other than door and no use of excessive force or physical injury to occupants did "not amount to behavior beyond all possible bounds of decency, and . . . atrocious, and utterly intolerable in a civilized community.") (internal quotation marks omitted).  The motion for summary judgment is therefore granted as to the state law claim of intentional infliction of emotional distress asserted against Lieutenant Wydra, Detective Quinn, and Officer Ryan.

**Connecticut Constitution Claims**

Belton alleges that the conduct of Lieutenants Wydra and Lupo, Sergeants Sullivan and Goclowski, Detectives Quinn and Crawford, Deputy Chief Kicak, Officers Hall, Hallstrom, Mello, Sheppard, Barbuto, Manfield, Rivera-Rodriguez, Vere, D'Amico, and Ryan during the search violated his rights under Article First, §§ 7 and 9 of the Connecticut Constitution. Article First, § 7 of the Connecticut Constitution essentially mirrors the Fourth Amendment's search and seizure clause and provides that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures." Conn. Const. art. 1 § 7. Article First, § 9 provides that: "No person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const. art. 1, § 9.

In *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998), the Connecticut Supreme Court recognized a private right of action for damages under Article First, §§ 7 and 9 of the Connecticut Constitution for illegal search and seizure of private homes by police officers. The court emphasized, however, that the decision to recognize a private right of action in that case, "does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. Rather, the decision to recognize such causes of action would be made on a case-by-case basis after "a multifactor analysis." *Id.* at 48.

The Hamden and West Haven Defendants argue that subsequent caselaw has limited the private right of action recognized in *Binette* to circumstances involving "egregious" violations. *See, e.g.*, *Nelson v. City of Stamford*, No. 09-CV-1690, 2012 WL 233994, at *12 (D. Conn. Jan. 25, 2012) (concluding that officers' conduct in allegedly shooting one plaintiff with a taser because he was resisting arrest and pushing the other plaintiff's head onto hood of car and

kneeing her in the leg causing minor cut "do not constitute egregious conduct recognized in *Binette* as warranting a private right of action under [Article First, §§ 7 and 9 of] the Connecticut Constitution"); *Faulks v. City of Hartford*, No. 8-CV-270, 2010 WL 259076, at *10 (D. Conn. Jan. 19, 2010) (granting summary judgment to defendant police officers on claim asserted under Article First, § 9 of the Connecticut Constitution because actions of officers in striking plaintiff until he fell and could be handcuffed did not rise to the level of egregious misconduct held to be actionable under *Binette*).

The Court agrees that the circumstances of the search of 28 Dix Street and the lack of physical injuries suffered by Belton in connection with his placement in handcuffs and escort to a police vehicle do not meet the level and type of egregiousness required by *Binette* so as to warrant recognition of a private right of action under Article First, §§ 7 and 9 of the Connecticut Constitution.  Lieutenants Wydra and Lupo, Sergeants Sullivan and Goclowski, Detectives Quinn and Crawford, Deputy Chief Kicak, Officers Hall, Hallstrom, Mello, Sheppard, Barbuto, Manfield, Rivera-Rodriguez, Vere, D'Amico, and Officer Ryan are therefore entitled to summary judgment on these claims.

**Conclusion**

The Clerk of Court is directed to edit the docket to reflect the correct spelling of Defendants D'Amico's, Manfield's, and Barbuto's last names.

Insofar as Belton is no longer incarcerated, if he wishes to pursue his claims against defendants Mastropetre and SA Duback, Belton must arrange for service of the summonses and complaint upon Mastropetre and Duback by **May 3, 2021.**[9]  **If Belton does not effect service by**

---

[9] In making the decision of whether to serve defendants Mastropetre and SA Duback, Belton should consider whether the issues resolved herein would have equal application to the claims against defendants Mastropetre and SA Duback.

**this date or move for an extension demonstrating good cause for the failure to serve by this date, all claims against Officer Mastropetre and SA Duback will be dismissed without prejudice.**

The Motion for Summary Judgment (**ECF No. 39**) filed by Defendants Wydra, Quinn, Ryan, Sullivan, Kicak, Crawford, Goclowski, Hall, Hallstrom, Mello, Sheppard, Lupo, Barbuto, Manfield, and Rivera-Rodriguez and the Motion for Summary Judgment (**ECF No. 42**) filed by Defendants' D'Amico and Vere are **GRANTED**.

SO ORDERED at Bridgeport, Connecticut this 18th day of March 2021.

*/s/ Kari A. Dooley*
Kari A. Dooley
United States District Judge